[No. F055923. Fifth Dist. Mar. 4, 2010.]

BRENTON R. SMITH et al., Plaintiffs and Respondents, v.
ADVENTIST HEALTH SYSTEM/WEST et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., IV.A., IV.C., V., and VI. of the Discussion.

## COUNSEL

Manatt, Phelps & Phillips, Barry S. Landsberg, Doreen W. Shenfeld, Joanna S. McCallum, Zoey Kohn; van Hall Law Offices, Suzanne F. van Hall; DiCaro, Coppo & Popcke and Carlo Coppo for Defendants and Appellants.

Andrews & Hensleigh, Barbara Hensleigh and John Aumer for Plaintiffs and Respondents.

## OPINION

**DAWSON, J.**—This appeal is another chapter in the litigation between Dr. Brenton R. Smith and three hospitals run by Adventist Health System/West. (See *Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478 [80 Cal.Rptr.3d 745] [hospital governing board erroneously revoked Smith's staff membership and hospital privileges]; *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501 [75 Cal.Rptr.3d 771] [litigation resulting from failure to consummate sale of Smith's clinics to hospital chain].)

To implement our decision in *Smith v. Selma Community Hospital*, the superior court ordered the hospital to allow Smith to exercise privileges at Selma Community Hospital for one year, after which Smith would be obliged to reapply. When Smith reapplied, his reapplication was rejected on the ground he was ineligible. Smith filed this lawsuit and asked that his status at Selma Community Hospital be restored until this lawsuit was decided. The superior court granted a preliminary injunction that restored Smith's privileges. Adventist Health System/West and its affiliates appealed.

We conclude that the superior court did not err when it (1) impliedly found that a statutorily required injunction bond had been waived or forfeited, (2) expressly found that Smith was likely to prevail on the merits, and

(3) balanced the likely interim harm to the parties of granting or denying the preliminary injunction. Consequently, the order granting the preliminary injunction will be affirmed.

## FACTS AND PROCEEDINGS

*Parties*

Plaintiffs in this lawsuit are Smith and two corporations (jointly, Smith) through which he provides medical care to his patients: (1) Valley Family Health Center Medical Group, Inc., and (2) Central Valley Maternal and Child Care Centers, Medical Group, Inc.

Defendants include (1) Adventist Health System/West, (2) Selma Community Hospital, (3) Hanford Community Medical Center, (4) Central Valley General Hospital, and (5) Richard Rawson, chief executive officer of Hanford Community Medical Center and the former president of Selma Community Hospital. We refer to these defendants collectively as Hospital Group.

The other defendants are (1) the Consolidated Medical Staff of Central Valley General Hospital, Selma Community Hospital and Hanford Community Medical Center and (2) Nicolas E. Reiber, M.D., the chief of the consolidated staff. Collectively, these defendants are referred to as CMStaff. We refer to the combination of Hospital Group and CMStaff as Adventist Health.

Adventist Health System/West owns, directly or through its subsidiaries, Selma Community Hospital, Hanford Community Medical Center, and Central Valley General Hospital. Selma Community Hospital, Inc., the corporation that held the license to operate Selma Community Hospital, retired its license and leased the facilities to Hanford Community Medical Center. It appears that Hanford Community Medical Center has operated the Selma facility under its license since October 2005.

It also appears that the medical staffs of the hospitals were reorganized around the same time. Prior to the reorganization, the medical staff of Selma Community Hospital was organized as a separate entity. After the reorganization, the medical staffs of the hospitals were a single entity, CMStaff, which adopted its own bylaws (Bylaws).

*Rejection of Smith's Application*

The disputes between Smith and Adventist Health are manifold. The dispute regarding Smith's hospital privileges and medical staff membership at

Selma Community Hospital is described in *Smith v. Selma Community Hospital, supra,* 164 Cal.App.4th 1478. We will not repeat the facts of that case here, but will pick up the description of the dispute with the Fresno Superior Court's order of December 5, 2006. That order stated that Smith would be permitted to practice on the staff of Selma Community Hospital for one year and then would have to reapply for privileges as would any other physician practicing there.

In October 2007, Smith reapplied for privileges. In December 2007, Reiber sent Smith a letter telling him that his application could not be accepted because he had not satisfied a 36-month waiting period specified in section 4.5-10 of the Bylaws. In particular, the letter referenced denials of reappointment at Hanford Community Medical Center and Central Valley General Hospital that occurred in early 2004 and stated those decisions were not final because they were the subject of a still pending lawsuit. The letter also advised Smith that, after December 19, 2007, he would no longer have privileges to practice at Selma Community Hospital. The letter did not identify any internal procedure by which Smith could challenge the decision that he was not eligible to reapply for hospital privileges.

*Proceedings in the Superior Court*

Smith disagreed with the way Adventist Health interpreted and applied the 36-month waiting period in section 4.5-10 of the Bylaws. As a result, a week before his privileges at Selma Community Hospital were to end, Smith filed a complaint in Fresno Superior Court against Adventist Health seeking a preliminary and permanent injunction and damages. The complaint alleged causes of action for (1) intentional and unlawful interference with the right to pursue a lawful occupation, (2) intentional interference with prospective business advantage, and (3) unfair competition.

On December 20, 2007, the Fresno Superior Court filed an order denying Smith's ex parte application for a temporary restraining order and an order to show cause regarding the issuance of a preliminary injunction. The order stated the reasons for the denial were (1) Smith's failure to serve his moving papers properly, (2) Smith's failure to exhaust his administrative remedies, and (3) improper venue.

As a result of Adventist Health's successful motion for a change in venue, the case was transferred to Kings Superior Court near the end of March 2008.

The superior court scheduled the hearing on Smith's motion for preliminary injunction for June 3, 2008. Smith's memorandum of points and authorities in support of motion for preliminary injunction chronicled (1) Adventist Health

System/West's acquisition of competing area hospitals—Central Valley General Hospital in 1998 and Selma Community Hospital in 2002, (2) Hospital Group's attempt to purchase Smith's clinics for $8 million and its failed attempt to renegotiate the purchase, which included threats to "see [him] in Lompoc[1] in six months," (3) Hospital Group's four illegal terminations of his privileges, which Smith alleges were motivated by a desire to eliminate him as competition, (4) Hospital Group's appointment of biased members to the judicial review committee that conducted the hearing concerning the suspension of his privileges at Central Valley General Hospital and Hanford Community Medical Center, (5) Hospital Group's active pursuit of Smith's prosecution by the Medical Board of California (Medical Board), and (6) the 2008 decision of the Medical Board that exonerated Smith of the allegations against him.[2] The evidence presented by Smith included declarations, his testimony before the Medical Board, documents from prior litigation and peer review proceedings, correspondence relating to CMStaff's rejection of his reapplication, and the 2008 decision of the Medical Board.

Hospital Group's opposition to the motion for preliminary injunction included as support (1) a September 2006 declaration from Rawson and (2) a copy of the 2003 "Decision and Report of the Judicial Review Committee" of the consolidated medical staff of Hanford Community Medical Center and Central Valley General Hospital. The decision addressed 34 charges of substandard care, 26 instances of abusive behavior, and 10 allegations of falsification of documents and found that only 11 were "not proven." The decision concluded that Smith should not be reappointed. It noted his insistence on treating the peer review inquiry as a sham and stated he "demonstrated an unwillingness or inability to profit from criticism in a collegial way."

The appellate record in the present matter contains no opposition to the preliminary injunction from CMStaff and no joinder by CMStaff in Hospital Group's opposition.

During the June 3, 2008, hearing, the topic of an injunction bond was not addressed. Much of the argument concerned the proper interpretation of the Bylaws and the provision containing the 36-month waiting period.

The superior court took the matter under advisement and filed an order granting the preliminary injunction on June 10, 2008. The court stated the

---

[1] A federal penitentiary is located in Lompoc, California. (See *People v. Williams* (1988) 44 Cal.3d 883, 901 [245 Cal.Rptr. 336, 751 P.2d 395].)

[2] We infer that the superior court granted Smith's request for judicial notice of the decision of the Medical Board, which adopted the proposed decision of the administrative law judge dated January 12, 2008.

order was needed (1) to restore the status quo to what existed before the dispute regarding the waiting period arose and (2) because Smith's damages would be difficult, if not impossible, to ascertain. The court specifically found that Smith "has a reasonable probability of prevailing on the merits of the dispute between the parties whether the three year waiting period set forth in the consolidated medical staff's bylaws applies to [Smith], or if the bylaws do apply, if the waiting period has expired." The court also weighed the harm to the parties and found that "the balance is in favor of restoring [Smith's] hospital privileges at Selma Community Hospital during the pendency of this lawsuit." The court specifically found that "the preliminary injunction balances the interest of [Smith] in pursuing his occupation and the interest of his patients in selecting a physician, while at the same time protecting the interest of [Adventist Health] in maintaining a high quality of patient care at the hospital."

The final sentence of the order stated that "[n]o bond is ordered to be posted by [Smith]."

Hospital Group and CMStaff each filed a notice of appeal on August 11, 2008.[3]

*CMStaff Bylaws*

The dispute over Smith's eligibility to reapply for membership on CMStaff involves the interpretation of certain provisions of the Bylaws. One aspect of the dispute concerns section 4.5-10 of the Bylaws and the meaning of the term "final adverse decision" as it marks the beginning of a 36-month period that must pass before an unsuccessful applicant may reapply. Here, provisions of the Bylaws relevant to this dispute are set forth in the sequence that they appear in the Bylaws, and the terms "final," "final decision," and "final action" have been italicized.

Section 4.5-8(b) of the Bylaws sets forth the action that may be taken by the governing boards upon a medical executive committee's recommendation that is unfavorable to the applicant. Where the disappointed applicant asserts the procedural rights to a hearing and the appellate review provided in article VII of the Bylaws, "the Governing Boards shall take *final action* only after the applicant has exhausted all procedural rights as established by these bylaws. After exhaustion of the procedures set forth in Article VII of these bylaws, the board shall make a *final decision*."

---

[3] In April 2009, this court denied Smith's motion to consolidate this appeal with *Smith v. Adventist Health Systems/West* (F057211, app. pending) and *Smith v. Consolidated Medical Staff of Selma Community Hospital* (F057212, app. pending), two appeals taken from the superior court's denial of Adventist Health's anti-SLAPP (strategic lawsuit against public participation) motions.

Section 4.5-9 of the Bylaws addresses the next logical step to be taken after a final decision is made—notifying the persons interested. That section is titled "Notice of *Final Decision*" and provides: "(a) Notice of the *final decision* shall be given to the chief of staff, the medical executive committee and the credentials committee, the chair of each department concerned, the applicant, and the chief executive officer."

The next provision of the Bylaws is section 4.5-10, which is titled "Reapplication After Adverse Appointment Decision" and provides in full: "An applicant who has received a *final adverse decision* regarding appointment shall not be eligible to reapply to the medical staff for a period of 36 months. Any such reapplication shall be processed as an initial application, and the applicant shall submit such additional information as may be required to demonstrate that the basis for the earlier adverse action no longer exists."

Section 7.1-4 of the Bylaws, titled "*Final Action*," states: "Recommended adverse actions described in Section 7.2 shall become *final* only after the hearing and appellate rights set forth in these bylaws have either been exhausted or waived, and only upon being adopted as *final action* by the Governing Boards."

Section 7.5-6 of the Bylaws, titled "Decision," provides: "(a) Except [in cases of modification or remand for further review], within 30 days after the conclusion of the appellate review proceedings, the Governing Boards shall render a *final decision* and shall affirm the decision of the judicial review committee . . . ."

*Divergent Views About Smith*

As background to our discussion of the issues presented on appeal, we note that the parties have painted very different portraits of Smith and his practice. On the one hand, counsel for CMStaff asserted at the superior court hearing that Smith's "behavior and conduct was egregiously poor." Counsel supported this assertion by relying on the 2003 Decision and Report of the Judicial Review Committee of the consolidated medical staff of Hanford Community Medical Center and Central Valley General Hospital. Counsel for Hospital Group described the committee's decision as concluding that "Dr. Smith had committed malpractice on 30 occasions, that he had falsified medical records on a number of occasions, and that he had berated and, quite frankly, terrorized patients and staff for years." Also, counsel for CMStaff asserted the

committee determined that the failure of the proposed sale of Smith's clinics to Hospital Group had no effect on the peer review process.[4]

On the other hand, Smith contends the 2003 decision of the committee was a sham that was pursued to eliminate him as competition after the alternate method of eliminating him—buying out his clinics—fell through. Smith supports this view by referencing, among other things, the conclusions in the 2008 decision of the Medical Board where, at page 60, the administrative law judge wrote: "[T]hese proceedings proved that Dr. Smith is an excellent, safe, competent and skillful practitioner and a danger to no one, and that his outstanding reputation in his medical community is well earned and fully warranted. The overwhelming weight of the credible and persuasive evidence is that he is a credit to the medical profession generally and to his practice community specifically. He is one of few physicians who are willing to go beyond 'lip service' about contributing to the rural poor and underserved small communities in California and has actually done something about it."

The foregoing descriptions illustrate the polarized nature of the litigation between Smith and Adventist Health and their conflicting interpretations of the evidence.

## DISCUSSION

I. *Requests to Expand the Record*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Bond Requirement*

A. *Contentions*

Code of Civil Procedure section 529[5] addresses the need for an undertaking when a preliminary injunction is granted. Subdivision (a) of section 529 provides in part: "On granting an injunction, the court or judge *must* require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be

---

[4] The sale of Smith's clinics to Hospital Group was the subject of the litigation in *Central Valley General Hospital v. Smith, supra,* 162 Cal.App.4th 501. The competition between Smith's clinics and Adventist Health was noted in *Smith v. Selma Community Hospital, supra,* 164 Cal.App.4th at page 1490 and the divergence of their economic interests was discussed at pages 1512 through 1513.

[*] See footnote, *ante,* page 729.

[5] All further statutory references are to the Code of Civil Procedure unless stated otherwise.

specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (Italics added.)[6]

In its opening appellate brief, Adventist Health contends that the injunction at issue here is void for lack of a bond. It describes the statutory requirement for an injunction bond as jurisdictional and contends the requirement cannot be waived. Smith disagrees, arguing that Adventist Health waived any objection to the lack of a bond.

### B. *Background*

Smith's memorandum of points and authorities in support of his motion for a preliminary injunction included the following heading: "VI. A BOND IS UNNECESSARY." (Boldface & underscoring omitted.) The single sentence under that heading asserted: "In this instance, a bond is unnecessary because there can be no compensable damages to Defendant Hospital for following the law with respect to the treatment of [Smith's] Medical Staff membership and clinical privileges."

Hospital Group's opposition to Smith's motion for a preliminary injunction did not address Smith's argument that a bond was unnecessary, did not mention the bond requirement, and did not cite section 529—the statutory authority for the requirement. Hospital Group's opposition did, however, address the balancing of harm by arguing "the risk of harm to patients and disruption to the operations of the Hospitals is real and substantial." CMStaff did not file an opposition or a joinder relating to Hospital Group's opposition.

During the June 3, 2008, hearing on the motion for preliminary injunction, the topic of a bond was not addressed.

On June 10, 2008, the superior court issued its order granting Smith's motion for preliminary injunction. The last sentence of the order states: "No bond is ordered to be posted by [Smith]." The order includes no discussion or express findings of fact relating to the bond.

### C. *Standard of Review*

Generally, a superior court's ruling on an application for a preliminary injunction is reviewed for an abuse of discretion. (*Cohen v. Board of*

---

[6] Section 529 uses the mandatory term "must," but contains no provision that prohibits the waiver of the injunction bond requirement. (See *Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1049, fn. 4 [68 Cal.Rptr.2d 758, 946 P.2d 427] [Cal. follows established principle that statutory rights may be waived unless statute specifically prohibits waiver].)

*Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) The party challenging the superior court's order has the burden of making a clear showing of such an abuse. (*Biosense Webster, Inc. v. Superior Court* (2006) 135 Cal.App.4th 827, 834 [37 Cal.Rptr.3d 759].) Appellate courts typically state that an abuse of discretion occurs when the lower court exceeds the bounds of reason or contravenes the uncontradicted evidence. (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].)

Notwithstanding the applicability of the abuse of discretion standard of review, the specific determinations underlying the superior court's decision are subject to appellate scrutiny under the standard of review appropriate to that type of determination. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136–1137 [60 Cal.Rptr.2d 277, 929 P.2d 596].) For instance, the superior court's express and implied findings of fact are accepted by appellate courts if supported by substantial evidence, and the superior court's conclusions on issues of pure law are subject to independent review. (*Ibid.*; see *Turlock Irrigation Dist. v. Zanker* (2006) 140 Cal.App.4th 1047, 1054 [45 Cal.Rptr.3d 167].)

Recognition of, and deference to, implied findings is derived from the principle that an appellate court must interpret the facts in the light most favorable to the prevailing party and indulge all reasonable inferences in support of the trial court's decision regarding the preliminary injunction. (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451 [125 Cal.Rptr.2d 277] ["For purposes of appellate review, we therefore presume the court considered every pertinent argument and resolved each one consistently with its minute order denying the preliminary injunction."].)

D. *Issues*

The first question presented is purely a question of law: Can the requirement for an injunction bond be waived or forfeited? The second question is whether the superior court's implied determination that Adventist Health waived or forfeited the bond requirement is supported by sufficient evidence.[7] We will answer both questions in the affirmative.

---

[7] Since 1993 (10 years after the Bond and Undertaking Law (§ 995.010 et seq.) was adopted), the California Supreme Court has encouraged practitioners and lower courts to use the terms "waiver" and "forfeiture" in a more technical and precise manner. (E.g., *In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1 [55 Cal.Rptr.3d 716, 153 P.3d 282]; *People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 [108 Cal.Rptr.2d 385, 25 P.3d 598]; *People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) Under this approach, the term "waiver" refers to a party's intentional relinquishment or abandonment of a known right or privilege, while "forfeiture" is used to refer to the loss of a right resulting from the failure to

### E.  *The Bond Requirement in Section 529 May Be Waived or Forfeited*

Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit." (See also *Bickel v. City of Piedmont, supra*, 16 Cal.4th at p. 1049, fn. 4 [taking note of "the established rule that rights conferred by statute may be waived unless specific statutory provisions prohibit waiver"].) Adventist Health has cited no statutory provision that prohibits waiver or forfeiture of the bond requirement of section 529.

In fact, the Bond and Undertaking Law, which relates to bonds and undertakings posted during the course of litigation,[8] includes three provisions that reinforce the view that the requirement of an injunction bond can be waived. Section 995.230 provides that "[t]he beneficiary of a bond given in an action or proceeding may in writing consent to the bond in an amount less than the amount required by statute or may waive the bond." Another so-called waiver is addressed in section 995.240, which states that a court has the discretion to "waive" a provision for a bond in an action where the principal is indigent.[9] Article 9 of the Bond and Undertaking Law (§ 995.910 et seq.) addresses the topic of "objections to a bond given in an action or proceeding" (§ 995.910). Section 995.930 addresses the form, procedure, and timing of objections as well as the waiver of objections. "If no objection is made within the time required by statute, the beneficiary is deemed to have waived all objections . . ." unless good cause is shown for the delay in objecting. (§ 995.930, subd. (c).)

We recognize, however, that application of these provisions of the Bond and Undertaking Law to the present case would present certain questions of statutory construction. Section 995.240 obviously does not apply here, and Smith does not contend otherwise. Section 995.230 and article 9 of the Bond and Undertaking Law both refer to "a bond *given* in an action or proceeding."

---

assert it in a timely fashion. (*People v. Simon, supra*, at p. 1097, fn. 9.) We will attempt to comply with our Supreme Court's guidance and will discuss the issues of waiver and forfeiture separately.

[8] The law became effective January 1, 1983. (§ 995.020, subd. (b).) It was designed to reduce the proliferation of procedural statutes governing bonds and undertakings and to provide uniform rules and procedures. (*California Financial Responsibility Co. v. Pierce* (1991) 226 Cal.App.3d 1663, 1667, fn. 5 [277 Cal.Rptr. 663].) For the remainder of this opinion, we will use the term "bond" to include both bonds and undertakings. (§ 995.140, subd. (a) [definition of bond includes an undertaking].)

[9] The enactment of section 995.240 did not create a new rule of law. Instead, it codified the common law authority of the courts recognized in *Conover v. Hall* (1974) 11 Cal.3d 842, 850–852 [114 Cal.Rptr. 642, 523 P.2d 682]. (Cal. Law Revision Com. com., 18 West's Ann. Code Civ. Proc. (2009 ed.) foll. § 995.240, p. 211.)

It appears that neither our Supreme Court in *Conover v. Hall* nor the Legislature in the Bond and Undertaking Law used the term "waiver" in its technical sense, which refers to *a party's* relinquishment or abandonment of a known right.

(Italics added.) Adventist Health argues that because no bond was issued or filed in this case, no bond was *given* and, thus, section 995.230 cannot be applied. It also argues that section 995.230 requires any waiver to be in writing and that the Legislature did not mean to distinguish between consents and waivers when it said in section 995.230 that the beneficiary of a bond "may in writing consent" to reduction in the bond amount or "may waive" the bond.

We note the inconsistency in arguing for a strict construction of the term "given" but a loose construction of the Legislature's failure to use the prepositional phrase "in writing" to modify both its authorization of consent to a reduction in bond amount and its authorization of waivers. Nonetheless, given the existence of Civil Code section 3513 and "the established rule that rights conferred by statute may be waived" (*Bickel v. City of Piedmont, supra*, 16 Cal.4th at p. 1049, fn. 4), we conclude it is not necessary that we decide these issues of statutory construction.[10] We therefore refrain from doing so.

Case law supports our conclusion that waiver or forfeiture of the injunction bond requirement is possible. In *City of Los Angeles v. Superior Court* (1940) 15 Cal.2d 16 [98 P.2d 207], a company sued the city to enjoin a nuisance created by the city's operation of an asphalt plant across the street from the company's place of business. After the trial had started, the parties stipulated to an injunction. (*Id.* at p. 23.) At the time, the city was in the process of making improvements to the plant. (*Ibid.*) After the stipulation had been in place for about five years, the city made unsuccessful attempts to have the case dismissed for failure to bring the matter to trial within five years. (*Id.* at p. 19.) On appeal, the city argued the trial court erred by not dismissing the action and by not requiring that a bond be posted. (*Id.* at p. 23.) The California Supreme Court rejected these arguments. Concerning the lack of an injunction bond, the court stated: "Nor is it the opinion of this court that the [city] may now complain of the fact that no bond was filed at the time the injunctive order was entered. In view of the facts and circumstances which gave rise to the execution of the stipulation, and considering the length of time which had elapsed during which no complaint was made by the [city] concerning the lack of any bond, they must be deemed to have waived any rights which theretofore they may have had in that regard." (*City of Los Angeles v. Superior Court, supra*, 15 Cal.2d at p. 23.)

The court's use of the phrase "deemed to have waived" instead of simply "waived" is equivalent to using "forfeited" as it is currently defined. (See

---

[10] The provisions of the Bond and Undertaking Law "are not exclusive, but are supplemented by the general provisions governing all bonds and undertakings, both common-law and statutory." (Cal. Law Revision Com. com., 18 West's Ann. Code Civ. Proc., *supra*, foll. § 995.020, p. 185.)

fn. 7, *ante.*) Therefore, the holding in *City of Los Angeles v. Superior Court* establishes that the injunction bond requirement can be waived or forfeited and, in certain situations, the trial court need not explicitly address the topic of the bond. (See also *Conover v. Hall, supra,* 11 Cal.3d 842 [Cal. Supreme Court recognizes general authority of trial courts to suspend statutory protection, despite mandatory language of § 529]; *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1448, fn. 7 [45 Cal.Rptr.2d 695] [appellate court noted an issue concerning lack of a bond but believed it was waived both on appeal and at trial level because restrained party did not address it there]; *Greenly v. Cooper* (1978) 77 Cal.App.3d 382, 385 [143 Cal.Rptr. 514] ["While a bond is generally required for a preliminary injunction (. . . § 529), this requirement may be waived under circumstances where the parties stipulate to the injunction [citation]."].)

Adventist Health cites (1) *Condor Enterprises, Ltd. v. Valley View State Bank* (1994) 25 Cal.App.4th 734 [30 Cal.Rptr.2d 613] (*Condor*) for the proposition that a preliminary injunction issued without a bond is a nullity, (2) *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 10 [286 Cal.Rptr. 518] (*ABBA Rubber*) for the proposition that the bond "is an indispensable prerequisite to the issuance of a preliminary injunction" and (3) *Neumann v. Moretti* (1905) 146 Cal. 31 [79 P. 512] (*Neumann*) for the proposition that it is reversible error for a trial court to issue an injunction without ordering that a bond be posted.

In our view, *Condor, ABBA Rubber* and *Neumann* are not authority for the broad proposition that the injunction bond requirement in section 529 cannot be waived or forfeited.

■ First, the opinions do not address the possibility of a waiver pursuant to (1) the general waiver provision set forth in Civil Code section 3513, or (2) the "established rule that rights conferred by statute may be waived unless specific statutory provisions prohibit waiver" (*Bickel v. City of Piedmont, supra,* 16 Cal.4th at p. 1049, fn. 4). Thus, they are not precedent for a rule of law that the injunction bond requirement cannot be waived. (See *People v. Barragan* (2004) 32 Cal.4th 236, 243 [9 Cal.Rptr.3d 76, 83 P.3d 480] [cases are not authority for propositions not considered].)

Second and alternatively, *Condor* and *ABBA Rubber* did not involve findings of fact by the trial courts that the injunction bond requirement had been waived or forfeited by the party to be enjoined. Exactly the opposite occurred; both trial courts impliedly found that no waiver or forfeiture had occurred. Thus, neither case is authority for the proposition that a superior court can never infer a waiver of the injunction bond requirement from the conduct of the restrained party.

In *Condor*, a junior lienholder sought to redeem property from a senior lienholder bank when the borrower defaulted. (*Condor, supra*, 25 Cal.App.4th at p. 736.) When the junior lienholder ran into difficulties with the bank, it filed a complaint seeking injunctive relief and damages. (*Id.* at p. 737.) The trial court granted a preliminary injunction and ordered the parties to open an escrow for the purpose of transferring funds and title to the property. (*Ibid.*) The court did not require an injunction bond. (*Id.* at p. 740.) Subsequently, the trial court considered whether to hold the bank in contempt of the preliminary injunction and whether to sanction the bank for violating the court's orders. The trial court found the bank was in contempt of the preliminary injunction, but decided not to hold it in contempt because the injunction was a nullity as no bond had been required. (*Ibid.*) Despite this determination, the trial court granted the junior lienholder's request for sanctions.

On appeal, the Court of Appeal agreed the preliminary injunction was a nullity without a bond and stated that "as a jurisdictional matter, a party cannot be held in contempt for disobedience to a preliminary injunction issued without a bond." (*Condor, supra*, 25 Cal.App.4th at p. 741.) The appellate court also reversed the award of sanctions, concluding that sanctions could not be imposed for disobedience of a void preliminary injunction. (*Id.* at p. 742.) The appellate court decision did not mention waiver of the bond requirement. Also, the cases upon which the appellate court relied did not consider waiver of the bond requirement. Furthermore, had the appellate court expressly considered the issue of waiver, the application of rules of appellate review would have required it to conclude that the trial court impliedly found that the bond requirement had not been waived because of the trial court's determination that the preliminary injunction was a nullity due to the lack of a bond.[11]

In *ABBA Rubber*, the trial court's minute order did not mention a bond. (*ABBA Rubber, supra*, 235 Cal.App.3d at p. 9.) After issuing the minute order, the trial court considered the plaintiff's proposed preliminary injunction and the defendants' objections, which raised the lack of a bond. The preliminary injunction signed by the court required the plaintiff to post a $1,000 bond. (*Ibid.*) The plaintiff argued that the failure to raise the issue of the bond prior to the trial court's issuance of its minute order waived the objection. (*Id.* at p. 10.) In our view, the trial court's decision to require a bond necessarily included an implied finding that the defendants had not waived their objection. Furthermore, when the appellate

---

[11] The appellate court's reference to the failure to require a bond in accordance with section 529 as a "jurisdictional defect" (*Condor, supra*, 25 Cal.App.4th at p. 741) is best suited to situations involving the court's authority in subsequent matters, such as those involving contempt proceedings or sanctions.

court rejected the plaintiff's argument that the defendants had waived the right to challenge the bond, the court explicitly stated that the plaintiff had made the argument *without authority*. (*Ibid.*) The appellate court's reference to the plaintiff's failure to provide authority functions as a warning to practitioners and other courts concerning the narrow scope of the issues actually decided in that case. (See *People v. Barragan, supra*, 32 Cal.4th at p. 243.) Thus, *ABBA Rubber* does not stand for the proposition that a party may never waive the injunction bond requirement of section 529. Instead, it stands for the narrower proposition that an appellate court will not *find as a matter of law* that a restrained party waives its statutory right to a bond by failing to affirmatively request it when neither the moving party nor the court has raised the topic prior to the trial court's ruling.

■ In summary, the injunction bond requirement of section 529 can be waived or forfeited by the party to be enjoined.

### F. Trial Court's Sua Sponte Duty

■ The California Supreme Court has stated that it is the duty of the court granting a preliminary injunction to require a bond in accordance with section 529. (*Neumann, supra*, 146 Cal. at p. 32; but see *City of Los Angeles v. Superior Court, supra*, 15 Cal.2d 16.) Here, the superior court's order stated: "No bond is ordered to be posted by [Smith]."

The duty to require an injunction bond does not apply in all cases. No such duty exists where a statutory exception applies (§ 529, subd. (b)) or where the bond requirement has been waived or forfeited (e.g., *City of Los Angeles v. Superior Court, supra*, 15 Cal.2d at p. 23 [court deemed injunction bond requirement waived]).

In this case, we conclude the superior court fulfilled its duty by addressing the bond requirement and stating no bond was ordered posted. We infer, from the superior court's statement, that it determined the requirement had been waived or forfeited. Our inference is based on (1) the rule that an appellate court must indulge all reasonable inferences in support of the superior court's decision regarding the preliminary injunction (*Whyte v. Schlage Lock Co., supra*, 101 Cal.App.4th at p. 1450) and (2) the fact that none of the recognized exceptions to the bond requirement contained in subdivision (b) of section 529 apply.

As a result, the remaining issue is whether the superior court's implied determination that the bond requirement was waived or forfeited is adequately supported by the record.

G. *Implied Finding of Waiver*

1. *Type of determination*

Initially, we must identify whether waiver presents a question of law or a question of fact. California law defines waiver as the intentional relinquishment or abandonment of a known right or privilege. (*In re Sheena K., supra,* 40 Cal.4th at p. 880, fn. 1.) Under this definition, waiver always is based upon intent and, thus, presents a question of fact. (*Smith v. Selma Community Hospital, supra,* 164 Cal.App.4th at p. 1506.) The intent to waive may be expressed in words, either oral or written, or implied by a party's conduct. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

Because waiver presents a question of fact, it is appropriate for this court to infer the trial court impliedly found the bond requirement was waived only if that implied finding is supported by substantial evidence. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 [17 Cal.Rptr.3d 96] [implied finding of fact must be supported by substantial evidence, otherwise appellate court may not infer it exists]; see *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [86 Cal.Rptr.2d 816, 980 P.2d 371] [under abuse of discretion standard of review, appellate court must accept trial court's implied findings of fact supported by substantial evidence].)

For that reason, the critical issue is whether substantial evidence supports an implied finding of waiver.

2. *Analysis of the evidence*

The record here includes nothing to show that either Hospital Group or CMStaff stated explicitly, either orally or in papers filed, that it waived its right to an injunction bond. We thus must determine whether waivers can be inferred from their conduct. (See *North Carolina v. Butler* (1979) 441 U.S. 369, 373 [60 L.Ed.2d 286, 99 S.Ct. 1755] [finding *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]) are waived is possible based on defendant's silence coupled with an understanding of the rights and conduct indicating waiver].)

Smith first argued that an injunction bond was unnecessary in his May 2008 memorandum of points and authorities in support of his motion for preliminary injunction. Hospital Group's opposition papers did not respond to Smith's argument that a bond was unnecessary and did not mention the bond requirement of section 529. CMStaff filed no opposition. During the hearing

on the motion for preliminary injunction, on June 3, 2008, the topic of a bond was addressed by neither the attorneys nor the superior court.

Nothing in the appellate record indicates that Hospital Group or CMStaff raised the injunction bond requirement after the superior court granted the preliminary injunction (June 10, 2008) and before they filed their notices of appeal (Aug. 11, 2008). Smith argues the notice of appeal is significant because that is the point when the superior court lost its authority to change the injunction order. (*Waremart Foods v. United Food & Commercial Workers Union* (2001) 87 Cal.App.4th 145, 154 [104 Cal.Rptr.2d 359] [trial court is without jurisdiction to modify or dissolve preliminary injunction during pendency of appeal].) Smith also argues that the failure by Hospital Group or CMStaff to raise the issue prior to their appeals provides additional support for that court's implied finding of waiver.

■ We conclude that substantial evidence supports the superior court's implied finding that Hospital Group and CMStaff waived the bond requirement. They were aware of Smith's position regarding the bond, yet did not oppose that position in writing or at the hearing. One reasonable inference from the inaction of Hospital Group and CMStaff in the face of Smith's explicit argument is that they consciously chose not to raise the bond requirement as part of a tactical decision to focus on the arguments that would result in the preliminary injunction being denied. (*Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1166–1167 [112 Cal.Rptr.2d 540] ["under general civil litigation principles, 'where a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that tactical decision as the basis to claim prejudicial error' "].) Although other reasonable inferences can be drawn from these facts, the substantial evidence standard of review does not allow an appellate court to reweigh the facts and circumstances presented to the superior court. (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465 [46 Cal.Rptr.2d 427, 904 P.2d 834], disapproved on other grounds in *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 352, fn. 17 [100 Cal.Rptr.2d 352, 8 P.3d 1089] [appellate courts do not reweigh the evidence, but grant the prevailing party the benefit of all reasonable inferences].) Accordingly, substantial evidence supports the trial court's implied finding of waiver. Stated in the reverse, the evidence does not compel us to find as a matter of law that no waiver occurred.

*Mangini v. J.G. Durand International* (1994) 31 Cal.App.4th 214 [37 Cal.Rptr.2d 153] is a case in which the Court of Appeal reversed a preliminary injunction due to the absence of a bond. In that case, the trial court imposed the preliminary injunction on the defendant's sale of certain leaded crystal stemware without requiring the plaintiff to post an injunction bond.

The defendant had objected to the lack of a bond. (*Id.* at p. 216.) The appellate court reversed the preliminary injunction because no bond had been required. The court acknowledged that federal courts had suspended the requirement for an injunction bond in certain environmental cases but concluded that, if such an exception existed, it would not apply to the facts presented. (*Id.* at pp. 218–219.) We mention *Mangini* here to note that it did not involve issues relating to waiver. The defendant's objection in the trial court demonstrates that the defendant did not waive the injunction bond and the appellate court did not consider the possibility of an implied finding of waiver.

In *ABBA Rubber*, the appellate court stated that "the defendants' initial silence did not waive their right to an undertaking." (*ABBA Rubber, supra,* 235 Cal.App.3d at p. 10.) As discussed *ante*, the issue presented was whether the appellate court should determine a waiver existed and override an implied finding to the contrary. (See pt. II.E., *ante.*) Thus, the appellate court's statement regarding the defendants' silence is properly interpreted to mean: The defendants' initial silence did not compel the appellate court to find as a matter of law that the defendants intended to relinquish their right to an injunction bond. In this case, the silence of Hospital Group and CMStaff about the bond requirement is distinguishable. In *ABBA Rubber*, neither the moving party nor the trial court mentioned the injunction bond requirement before the trial court issued its minute order. In contrast, Smith's moving papers explicitly raised the issue of an injunction bond by arguing it was not necessary. In response, CMStaff did not oppose Smith's motion, much less his specific argument for no bond. Hospital Group failed to respond to Smith's "no bond" argument. In addition, the length of Adventist Health's three months of silence is much longer than the period between issuance of the minute order in *ABBA Rubber* and the defendants' filing of written objections to the plaintiff's proposed form of preliminary injunction.

The decisions in *ABBA Rubber* and *Mangini v. J.G. Durand International* did not address whether substantial evidence supported the trial court's finding of waiver and, thus, do not support the conclusion that the evidence in this case is insufficient to support the implied finding of waiver.

### H. *Forfeiture and Tactical Decisions*

As an alternative to waiver, we consider whether forfeiture justifies upholding the superior court's order. Regardless of whether forfeiture is treated as a question of law or fact, we conclude that the same evidence that supports the finding of waiver also provides a sufficient basis for upholding the superior court's implied determination that both Hospital Group and CMStaff forfeited

the argument that the preliminary injunction lacked a bond. In short, the record demonstrates that they failed to assert the lack of a bond in a timely fashion.

In addition to upholding the superior court's implied determination, we independently reach the same conclusion regarding forfeiture for purposes of this appeal. When an appellate court decides whether to consider an issue on appeal, its analysis of forfeiture may include matters that were not before the superior court at the time of its ruling. For example, in *City of Los Angeles v. Superior Court, supra*, 15 Cal.2d 16, the California Supreme Court supported its determination that the lack of an injunction bond should be deemed waived by referring to how the litigation had progressed *after* the trial court issued the injunction without a bond, including the length of time that lapsed without a complaint about the lack of a bond. (*Id.* at p. 23.)

In this case, CMStaff did not file a written opposition to the preliminary injunction, much less oppose the lack of an injunction bond. Nearly three months passed before Hospital Group mentioned the bond requirement contained in section 529. During that time, Hospital Group and CMStaff had filed their notices of appeal and Hospital Group had changed its attorneys. Hospital Group first raised the argument that the preliminary injunction was void because no bond had been posted in a September 8, 2008, letter from its new attorneys to the lawyer representing Smith. Hospital Group first brought this argument to the attention of the superior court in connection with a hearing on a motion to compel discovery held on September 19, 2008.[12] During that hearing, the new attorneys for Hospital Group argued the preliminary injunction should be rescinded due to the lack of a bond. Nothing in the record indicates the injunction was rescinded.

Based on the information available to the superior court at its June 2008 hearing and the later information that is available in the appellate record, we conclude that both Hospital Group and CMStaff failed to raise the lack of an injunction bond in a timely fashion and, thus, have forfeited the issue. Their postinjunction actions and inaction confirm their earlier choice was tactical. Furthermore, we are disinclined to allow parties to achieve a greater benefit by saving the injunction bond issue for appeal when it could have been dealt with more efficiently in the lower court with much less detriment to the party

---

[12] The notices of appeal were filed on August 11, 2008. Hospital Group was able to get its postnotice of appeal letter and argument to the superior court into the appellate record by including in its appellants' appendix: (1) its opposition to a motion to compel depositions and (2) a transcript of the September 19, 2008, hearing on the motion to compel. Smith, however, did not object and neither does he argue that Adventist Health's attack on the preliminary injunction for lack of a bond should be rejected as being raised for the first time on appeal. (See *Glade v. Glade, supra*, 38 Cal.App.4th at p. 1448, fn. 7 [issue regarding bond raised for first time on appeal].) We therefore refrain from addressing the matter.

who obtained the injunction. Addressing the issue on appeal would encourage "sandbagging." The resulting inefficiencies are an unacceptable burden on the administration of civil litigation, especially in light of the current workload and budgetary constraints under which superior courts operate. (See *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 29 [21 Cal.Rptr.2d 104] [judicial economy weighs against allowing a party to change theories on appeal].)

### III. *Basic Principles Regarding Preliminary Injunctions*

#### A. *Two Interrelated Factors*

■ A superior court must evaluate two interrelated factors when ruling on a request for a preliminary injunction: (1) the likelihood that the plaintiff will prevail on the merits at trial and (2) the interim harm that the plaintiff would be likely to sustain if the injunction were denied as compared to the harm the defendant would be likely to suffer if the preliminary injunction were issued. (*Cohen v. Board of Supervisors, supra,* 40 Cal.3d at p. 286.) Weighing these factors lies within the broad discretion of the superior court. (*Ibid.*)

#### B. *Appellate Review*

On appeal, the party challenging the superior court's order has the burden of making a clear showing of an abuse of discretion. (*Biosense Webster, Inc. v. Superior Court, supra,* 135 Cal.App.4th at p. 834.) When the superior court *grants* a preliminary injunction, the restrained party need only show that the superior court abused its discretion as to one of the two factors. (*Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487, 1493 [83 Cal.Rptr.2d 455].) An abuse of discretion occurs when the superior court exceeds the bounds of reason or contravenes the uncontradicted evidence. (*Continental Baking Co. v. Katz, supra,* 68 Cal.2d at p. 527.)

### IV. *Probability of Success on the Merits*

Adventist Health contends that Smith did not show a likelihood of success on the merits because (1) he was required to file and win a mandamus petition under section 1085 before beginning the instant action and (2) he cannot show that the Bylaws rule regarding the 36-month waiting period was interpreted or applied improperly.

#### A. *Section 1085*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante,* page 729.

## B. *Interpretation and Application of the 36-month Rule*

### 1. *How the rule was applied by Adventist Health*

The Fresno Superior Court's order of December 5, 2006, stated that Smith was "permitted to practice on the Consolidated Medical Staff at . . . Selma Community Hospital for a period of one (1) year following the submission of his application, and then must reapply for privileges, as would any other physician practicing there."

In October 2007, Smith submitted a reapplication for privileges. By letter dated December 4, 2007, the medical executive committee of the CMStaff informed Smith: "Your application cannot be accepted since you have not yet satisfied the waiting period which applies in the case of an adverse appointment decision." The letter (1) referenced the summary suspension and the denial of reappointment that were affirmed by the Hanford Community Medical Center governing board in January 2004 and by the Central Valley General Hospital governing board in February 2004, (2) stated the matters were the subject of a pending lawsuit and had not reached a final decision, and (3) asserted Smith would have to wait three years after the final decision in the lawsuit before he could apply for medical staff membership and hospital privileges. The letter cited section 4.5-10 of the Bylaws. The letter also advised Smith that, after December 19, 2007, he would no longer have privileges to practice at Selma Community Hospital.[14]

Section 4.5-10 of the Bylaws provides in part: "An *applicant* who has received a *final adverse decision* regarding appointment shall not be eligible to reapply to the medical staff for a period of 36 months." (Italics added.) The meanings of the terms "applicant" and "final adverse decision" are disputed by the parties.

### 2. *The issues presented*

In pursuing the preliminary injunction, Smith argued that the 36-month waiting period did not apply or, alternatively, had expired and, thus, should not bar consideration of his reapplication for privileges. First, Smith contends

[14] The letter was signed by Dr. Nicolas E. Reiber and identified him as "Chief of Staff." The letter, however, does not identify who interpreted the Bylaws. For example, it does not state explicitly whether the meaning of "final adverse decision" was determined (1) by Reiber, as chief of staff, (2) by a vote of the medical executive committee, or (3) by a vote of the members of CMStaff. Contrary to Adventist Health's position, we conclude the letter is ambiguous. Because this appeal only concerns a preliminary injunction, the parties will have the opportunity during the further proceedings that take place in the superior court to develop the historical facts of how the interpretation was formed and by whom—assuming they deem those facts to be relevant to their disputes.

section 4.5-10 of the Bylaws did not apply because he was reapplying for membership and privileges and was not an initial applicant. In support of this contention, Smith argues Adventist Health's reliance on section 4.5-10 of the Bylaws is based on a misreading of the mandamus order that enforced our decision in *Smith v. Selma Community Hospital, supra,* 164 Cal.App.4th 1478. Second, Smith contends that "final adverse decision" refers to a decision by CMStaff and not a decision by the consolidated medical staff of Hanford Community Medical Center and Central Valley General Hospital. Third, Smith contends that, if Bylaws section 4.5-10 applies, the 36-month waiting period began when the decision of the consolidated medical staff of Hanford Community Medical Center and Central Valley General Hospital became a final administrative decision, not when the court's decision became final.

In contrast, Adventist Health contends that CMStaff properly interpreted and applied the 36-month waiting period contained in the Bylaws. Adventist Health argues that the interpretation of the Bylaws by CMStaff is entitled to deference and should be rejected only if it is arbitrary or unreasonable. Adventist Health asserts that deference is justified because the operation and administration of a hospital involve a great deal of technical and specialized knowledge and expertise, and courts should be hesitant to second-guess that expertise.

Smith opposes the deferential approach to interpreting the Bylaws and argues this court should interpret that document as it would any other contract. Smith supports this position by referring to section 14.5 of the Bylaws, titled "Effect of the Bylaws," which provides: "Upon adoption and approval as provided in Article XIV, in consideration of the mutual promises and agreements contained in these bylaws, the hospital and the medical staff, intending to be legally bound, agree that these bylaws shall constitute part of the contractual relationship existing between the hospital and the medical staff members, both individually and collectively."

██ We note that the approach used may lead to different results when medical staff bylaws are ambiguous—that is, reasonably susceptible of more than one interpretation. If a court uses the deferential approach, the interpretation of the hospital staff will be upheld so long as it is one reasonable way to resolve the ambiguity. Alternatively, under the contract approach, the court examines the range of reasonable interpretations and chooses the one that best implements the parties' outward manifestation or expression of intent under an objective standard. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141 [127 Cal.Rptr.2d 145].) The contract approach protects the objectively reasonable expectations of the parties subject to the document. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1268 [35 Cal.Rptr.3d 343].)

### 3. *Rules governing the interpretation of bylaws*

It does not appear that the California Supreme Court has decided this issue. And, although this court has considered the interpretation of medical staff bylaws, it has not explicitly decided the circumstances that justify the use of one approach over the other. For example, in *Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115 [272 Cal.Rptr. 273], we noted that a dispute between the doctor and a hospital would be resolved by how the medical staff bylaws were interpreted. We stated that "[a]lthough the interpretation of a writing is generally a question of law, extrinsic evidence is admissible to interpret the instrument. [Citation.]" (*Id.* at p. 1131.) This statement might be construed to indicate that the general rules of contract interpretation applied to the dispute about the meaning of medical staff bylaws. This court, however, did not interpret the bylaws, stating it could not decide that question as a matter of law because of conflicts in the extrinsic evidence presented by the parties. (*Ibid.*)

In *Eight Unnamed Physicians v. Medical Executive Com.* (2007) 150 Cal.App.4th 503 [59 Cal.Rptr.3d 100], the court stated the bylaws plainly provided for the procedural right disputed by the parties. "This conclusion is in accord with the [medical executive committee's] reading of its bylaws, and we independently agree with the [medical executive committee's] interpretation. (See generally *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 531, 555 [27 Cal.Rptr.3d 171] [court usually defers to agency's construction of its own regulations, but bears ultimate responsibility for deciding whether agency's interpretation is clearly erroneous or unreasonable].)" (*Id.* at p. 514.) On the one hand, the words "independently agree" suggest the court's interpretation resulted from an independent, not a deferential, review. On the other hand, the citation suggests that deference usually is appropriate.

To provide context for our discussion of the approach courts should take when interpreting medical staff bylaws, we will review briefly how courts have conceptualized the bylaws.

The courts in this country have not been uniform in their conclusions about whether bylaws are a contract or not. For example, almost 25 years ago, the court in *Munoz v. Flower Hospital* (1985) 30 Ohio App.3d 162 [507 N.E.2d 360] reviewed the split of authority on the question whether hospital staff bylaws were binding contracts and stated: "The most enlightened reasoning seems to be that staff bylaws can form a binding contract between the doctors and hospital but only where there can be found in the bylaws an intent by both parties to be bound." (*Id.*, 507 N.E.2d at p. 365.) More recently, a federal district court in California observed that "[w]hether hospital bylaws

create an enforceable contract is a question of first impression in California." (*Janda v. Madera Community Hospital* (E.D.Cal. 1998) 16 F.Supp.2d 1181, 1186.) In that case, the court decided to treat the hospital bylaws as a contract between the hospital and the physician. (*Id.* at p. 1188.) After *Janda*, the Second Appellate District concluded that, in the circumstances before it, the medical staff bylaws did not in and of themselves constitute a contract between the hospital and the physician. (*O'Byrne v. Santa Monica-UCLA Medical Center* (2001) 94 Cal.App.4th 797, 810 [114 Cal.Rptr.2d 575].)

Here, the Bylaws removed any uncertainty created by the case law by explicitly stating that they form part of a contract between the hospital and medical staff members. In light of the general principle regarding freedom of contract, we conclude *O'Byrne v. Santa Monica-UCLA Medical Center* is distinguishable and its holding does not prevent or nullify the agreement in section 14.5 of the Bylaws that the Bylaws are part of a binding contract.

Returning to the question regarding what rules of interpretation this court should apply to the Bylaws, we conclude that the rules of law generally applied to the interpretation of contracts are appropriate *for the provisions in dispute in this case.*[15] First, application of the general rules of contract interpretation is consistent with (albeit not necessarily required by) section 14.5 of the Bylaws, which states the Bylaws constitute part of a contractual relationship. Also, the terms of the Bylaws do not contradict this conclusion by granting a particular individual, committee, or group the authority to resolve questions of interpretation or clarify ambiguities. For example, the Bylaws do not state that the meaning of any ambiguous provision shall be determined by the chief of staff, the bylaw committee, the medical executive committee, or the membership.

Second, the cases that say deference is given to the entity adopting policies, rules, or regulations are distinguishable because, among other things, the adoption of policies, rules or regulations is a unilateral process that involves only the adopting entity's intent, not an expression of mutual intent. In contrast, the adoption of the Bylaws was not a unilateral process because it involved the approval, and thus the intentions, of more than one party. (E.g., *Kansas Heart Hospital, L.L.C. v. Idbeis* (2008) 286 Kan. 183, 204 [184 P.3d 866, 883] [corporate bylaws result from agreement between corporation and

---

[15] We italicize this qualifying language to emphasize our view that courts and practitioners faced with whether the deferential approach is appropriate should consider whether their situation involves (1) a dispute over interpretation, (2) a dispute over the application of an interpretation, or (3) both. They also should consider whether any such dispute truly involves the use of expertise of medical professionals.

Our conclusion regarding the rules of law that govern the interpretation of section 4.5-10 of the Bylaws does not imply that a contract exists between Smith and any defendant. Whether a contract exists is a question that need not be decided in this appeal.

its members and, thus, are interpreted in same manner as other contracts].) The multilateral nature of the approval is demonstrated by the applicable regulation, which provides that medical staff bylaws must be adopted by vote of the members with the approval of the hospital's governing board.[16] (Cal. Code Regs., tit. 22, § 70703, subd. (b).) Applying the general rules of contract interpretation to the procedural provisions of medical staff bylaws will protect the objectively reasonable expectations of all parties.

Third, the rules of contract interpretation have been applied by a California court to bylaws adopted in another context. (See *Singh v. Singh* (2004) 114 Cal.App.4th 1264, 1294 [9 Cal.Rptr.3d 4] [corporate bylaws construed under general rules governing construction of statutes and contracts].)

Fourth, and most importantly, the meaning of the terms "applicant" and "final adverse decision" involves a procedural rule and the rights that rule provides in an adversarial context. Interpreting the procedural rule does not involve an exercise of medical expertise or judgment. Thus, this situation is distinguishable from cases in which a hospital board decides how to apply a term such as "qualified" or "hospital's best interests." (*Hale v. Stoughton Hospital Assn., Inc.* (Ct.App. 1985) 126 Wis.2d 267, 276 [376 N.W.2d 89, 94] [hospital board was sole judge of "hospital's best interests," phrase used in hospital bylaws regarding termination of officers].)[17] In addition, this case is distinguishable from those cases that grant deference to a hospital board when it is exercising discretion granted to it in the bylaws. (See *Owens v. New Britain General Hospital* (1994) 229 Conn. 592, 606–607 [643 A.2d 233, 241] [exercise of discretion by hospital staff and administration regarding whether physician is entitled to staff privileges is subject to limited judicial surveillance].) Here, CMStaff has not been given the discretion to decide the meaning of ambiguous terms generally or the meaning of the terms "applicant" or "final adverse decision" in particular.

### 4. *Meaning of term "final adverse decision"*

The standard analysis used to review a trial court's interpretation of a written contract is set forth in *Winet v. Price* (1992) 4 Cal.App.4th 1159 [6 Cal.Rptr.2d 554] and begins with the threshold question of whether the

---

[16] Rawson's declaration stated that "after the consolidation, new Medical Staff bylaws which would govern the Medical Staff at H[anford] C[ommunity] M[edical] C[enter] and Central Valley General Hospital . . . needed to be prepared and approved by the Consolidated Medical Staff. This was one of the most time-sensitive and challenging aspects of the consolidation." The declaration did not describe the approval process.

[17] Again, we emphasize that the *application* of a provision to a particular fact pattern is different than *determining the meaning* of a particular term. (See fn. 14, *ante.*) A deferential approach is more likely to be appropriate when an agreed-upon definition must be applied to a particular set of facts than when the meaning of a term must be defined.

writing is ambiguous—that is, reasonably susceptible of more than one interpretation. (*Id.* at pp. 1165–1166.) The inquiry into ambiguity presents a question of law subject to independent review on appeal. (*Id.* at p. 1165.)

In this case, we will assume for purposes of argument that the term "final adverse decision" as used in section 4.5-10 of the Bylaws is reasonably susceptible of two interpretations. First, as urged by Adventist Health, it could mean that a decision does not become "final" until the doctor has exhausted all administrative and judicial mandamus remedies. Second, as argued by Smith, it could mean the final decision of the governing boards.

The parties presented the trial court with no extrinsic evidence regarding the intentions of the persons who adopted or approved the Bylaws.[18] As a result, the interpretation of section 4.5-10 of the Bylaws is a question of law subject to independent review on appeal. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

The Bylaws, when read as a whole, should be interpreted so that the term "final adverse decision" corresponds to the "final decision" referenced in section 4.5-8(b)(2) of the Bylaws and the "final decision" subject to the notice provision of section 4.5-9(a) of the Bylaws. (See *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 829 [140 Cal.Rptr. 442, 567 P.2d 1162] [medical staff bylaws "read as a whole" by the court].)

Section 4.5-8(b)(2) of the Bylaws concerns situations where the medical executive committee has made a recommendation unfavorable to the applicant, and the applicant exercises the procedural right to a hearing. It states that "the Governing Boards shall take *final action* only after the applicant has exhausted all procedural rights as established by these bylaws." (Italics added.) It further states that, after the exhaustion of the procedure contained in the Bylaws, "the board shall make a *final decision*." (Italics added.) Section 4.5-9 of the Bylaws is titled "Notice of Final Decision" and provides in part: "Notice of the *final decision* shall be given to . . . the applicant . . . ." (Italics added.)

Accordingly, an objectively reasonable person reading through the provisions of section 4.5 of the Bylaws would conclude upon reaching the term "final adverse decision" in section 4.5-10 that the decision referenced is the same decision described as "final" in the preceding provisions. Furthermore, subsequent provisions in the Bylaws do not contradict this interpretation. Reading "final adverse decision" to mean a final decision of the

---

[18] Smith's counsel cites documents from 2004 as extrinsic evidence of intent. We conclude the documents are not relevant because they are not expressions of intent communicated between the persons who adopted the Bylaws. Thus, the documents are not relevant to the *mutual* intent of the parties at the time the Bylaws were approved.

governing board that is adverse to the applicant is consistent with the way the terms "final decision" and "final action" are used elsewhere in the Bylaws, including section 7.1-4 (titled "Final Action") and section 7.5-6 (titled "Decision").[19] In addition, we have located nothing within the four corners of the Bylaws that suggests the term "final adverse decision" refers to a decision entered in a judicial proceeding.

Based on this interpretation, we conclude that, unless Adventist Health is able to present extrinsic evidence that causes the superior court to adopt a different interpretation of the Bylaws, Smith will prevail on his contention that the 36-month waiting period expired in February 2007 because the decisions of the governing boards of Hanford Community Medical Center and Central Valley General Hospital became final in February 2004.

Alternatively, we conclude that section 4.5-10 of the Bylaws does not apply in this case because the "final adverse decision" referenced by section 4.5-10 involves a decision made under the Bylaws and does not include decisions relating to appointments to other medical staffs. Section 4.5-10's use of the phrase "reapply to the medical staff" means the prior application also must have been made to "the medical staff." The term "medical staff" is defined at page 2 of the Bylaws to mean those physicians "who have been granted recognition as members of the medical staff pursuant to the terms of these bylaws." The medical staff created by "these bylaws" is CMStaff. Because the decisions of the governing boards of Hanford Community Medical Center and Central Valley General Hospital are not final adverse decisions regarding appointment to CMStaff, section 4.5-10 of the Bylaws does not apply in this case.

The superior court correctly determined that Smith had a reasonable probability of prevailing on the merits of the dispute regarding the application of the waiting period and, therefore, Smith would be entitled to relief in the form of a permanent injunction.

Because of the foregoing conclusions, we need not decide (1) whether Smith was an applicant or a reapplicant, (2) whether Smith was a member of

---

[19] The relevant language of these two provisions from article VII of the Bylaws is set forth earlier in this opinion. Adventist Health argues that the reference to a final action in section 7.1-4 of the Bylaws should be given a different meaning than the reference to a final adverse decision in section 4.5-10 because the two sections have different purposes. We reject this argument based on the structure of the provisions of article IV of the Bylaws and what an objectively reasonable person would interpret the term "final adverse decision" to mean when placed in the context of the entire document.

CMStaff, or (3) the proper semantics to describe his status under the mandamus order of December 5, 2006.[20]

C. *The Merits of Smith's Three Causes of Action**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V., VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The order granting the preliminary injunction is affirmed. Plaintiffs shall recover their costs on appeal.

Levy, Acting P. J., and Kane, J., concurred.

A petition for a rehearing was denied April 1, 2010, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied June 17, 2010, S181864.

---

[20] We note that interpreting the December 5, 2006, mandamus order to mean that Smith was to be treated as though he were a member of CMStaff with privileges limited to Selma Community Hospital would be consistent with our decision in *Smith v. Selma Community Hospital, supra,* 164 Cal.App.4th 1478.

*See footnote, *ante*, page 729.