[No. A065120. First Dist., Div. Five. Dec. 29, 1994.]

JANET C. MANGINI, Plaintiff and Respondent, v.
J.G. DURAND INTERNATIONAL, Defendant and Appellant.

## Counsel

Beveridge & Diamond, James L. Meeder, Robert D. Wyatt and Susan C. Cagann for Defendant and Appellant.

Milberg, Weiss, Bershad, Hynes & Lerach, William S. Lerach, Alan M. Mansfield, Artie Baran, Frank J. Janecek, Jr., Bushnell, Caplan & Fielding, Alan M. Caplan, Philip Neumark and April M. Strauss for Plaintiff and Respondent.

## Opinion

PETERSON, P. J.—J.G. Durand International (Durand) appeals from a preliminary injunction order which prevents it from selling certain patterns of leaded crystal stemware in California unless it provides consumers with a notice which warns about exposure to lead. Durand contends the injunction must be set aside because the trial court (1) failed to order the plaintiff to post an injunction bond, and (2) improperly delegated its judicial responsibilities to the Attorney General in violation of the constitutional separation of powers.

We find the first of these arguments persuasive and will reverse the preliminary injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1986, the voters of this state approved Proposition 65 which added sections 25249.5 through 25249.13 to the Health and Safety Code. Under Health and Safety Code section 25249.6, persons doing business in this state are prohibited from intentionally exposing any individual to a chemical which is known to the state to cause cancer or reproductive toxicity unless a clear and reasonable warning is given. The parties to this appeal agree that lead is one of the chemicals which triggers a warning obligation under Health and Safety Code section 25249.6.

In June 1993, respondent Janet C. Mangini (Mangini) sent the Attorney General a letter stating her intent to bring an action against Durand unless the Attorney General should move to prevent Durand from selling leaded crystal stemware in California without a Proposition 65 warning. The Attorney General declined to proceed, so Mangini filed an action against Durand and others alleging they had violated Proposition 65.

Subsequently, Mangini moved for a preliminary injunction to prevent Durand from selling certain patterns of its leaded crystal stemware without a Proposition 65 warning. After extensive argument, the court granted the injunction on January 31, 1994. Among other things, the court enjoined Durand from selling three patterns of leaded crystal stemware unless Durand provided its customers with a notice warning about the danger of exposure to lead. Then, adopting language supplied by Durand, the court said the warning obligation would be "vacated and of no force and effect . . . upon a showing that the Attorney General of the State of California has determined, after submission of test data by Durand, that one or more of the enjoined patterns do not require a Proposition 65 warning." Finally, over Durand's objection, the court imposed the injunction without requiring Mangini to post a security bond.

On February 8, 1994, Durand submitted to the Attorney General testing data concerning the three patterns of stemware which had been enjoined. After reviewing the data, the Attorney General responded on February 17, 1994, and said that two of the three patterns could be sold without a Proposition 65 warning, but that the third pattern, the "Florence Flute" champagne glass, could be sold only if a warning were provided.

Durand then attempted to convince the Attorney General to reconsider his conclusions. When the Attorney General declined, Durand filed the present appeal.

## II. DISCUSSION

■ The pivotal issue in this case is whether the trial court erred when it imposed the preliminary injunction without requiring Mangini to post a

security bond. Code of Civil Procedure[1] section 529 governs injunction bonding and states that when an injunction is granted "the court . . . *must require an undertaking on the part of the applicant* to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (Subd. (a), italics added.)

Despite the mandatory character of this language, the bonding requirement is subject to several exceptions. Under section 529, subdivision (b), a court need not order a bond in proceedings for legal separation or dissolution, for applicants under the Domestic Violence Protection Act (Fam. Code, § 6200 et seq.), or from the public entities or officers described in section 995.220. Furthermore, the Bond and Undertaking Law (§ 995.010 et seq.) grants courts the authority to waive the bond requirement for litigants who are indigent. (See § 995.240.) However, in the absence of one of these exceptions, the courts have interpreted section 529's bonding requirement strictly. (See *ABBA Rubber Co.* v. *Seaquist* (1991) 235 Cal.App.3d 1, 10 [286 Cal.Rptr. 518] [A bond is an "indispensable prerequisite to the issuance of a preliminary injunction" and the duty to order a bond is "mandatory, not discretionary."]; *In re Marriage of Van Hook* (1983) 147 Cal.App.3d 970, 989 [195 Cal.Rptr. 541] [Injunction is void without an undertaking.]; *Miller* v. *Santa Margarita Land etc. Co.* (1963) 217 Cal.App.2d 764, 766 [31 Cal.Rptr. 866] [Preliminary injunction reversed because no bond ordered.]; *Federal Automotive Services* v. *Lane Buick Co.* (1962) 204 Cal.App.2d 689, 695 [22 Cal.Rptr. 603] [Injunction held inoperative and of no effect because the order did not require a bond.].)

In the present case, Mangini does not claim she comes within one of the exceptions which are set forth in section 529, subdivision (b); nor does she claim indigency within the meaning of section 995.240. Instead, she relies on a line of federal decisions which have held or assumed that only a nominal injunction bond should be imposed in cases which seek to protect the environment. (See, e.g., *People* ex rel. *Van De Kamp* v. *Tahoe Regional Plan* (9th Cir. 1985) 766 F.2d 1319 (*Tahoe Regional Plan*); *Friends of the Earth, Inc.* v. *Brinegar* (9th Cir. 1975) 518 F.2d 322; *Natural Resources Defense Council, Inc.* v. *Morton* (D.D.C. 1971) 337 F.Supp. 167 (*Morton*), affd. on other grounds (D.C. Cir. 1972) 458 F.2d 827 [148 App.D.C. 5]; *Sierra Club* v. *Froehlke* (S.D.Tex. 1973) 359 F.Supp. 1289, revd. on other grounds *sub nom. Sierra Club* v. *Callaway* (5th Cir. 1974) 499 F.2d 982; *State of Ala.* ex rel. *Baxley* v. *Corps of Engineers* (N.D.Ala. 1976) 411

---

[1]Unless otherwise indicated, all subsequent statutory references are to the Code of Civil Procedure.

F.Supp. 1261 (*Corps of Engineers*).) Mangini contends that since the object of her suit is to advance the public interest by warning consumers about the danger of lead exposure, the trial court here properly waived the bond requirement. No published California appellate decision has approved and followed the federal cases on which Mangini relies.

We need not answer this contention directly because, even if California courts have authority which is similar to that delineated by the federal rule (an issue we decline to decide), that rule would not assist Mangini here. The federal rule is based on the perception that the public interest in preserving the environment pending a hearing on the merits is more significant than the defendant's economic interest. (*Tahoe Regional Plan, supra,* 766 F.2d at pp. 1325-1326; *Morton, supra,* 337 F.Supp. at p. 169.) Where the plaintiff has established a probability of success on the merits and has persuaded a trial court to grant injunctive relief, the federal courts conclude that to require a plaintiff to post a substantial bond could severely impair legitimate environmental challenges, particularly from relatively impecunious plaintiffs. Any bond other than a nominal one could "effectively deny access to judicial review" or "close the courthouse door in public interest litigation by imposing a burdensome security requirement on plaintiffs who otherwise have standing" to raise an environmental challenge. (*Tahoe Regional Plan, supra,* 766 F.2d at p. 1325; *Corps of Engineers, supra,* 411 F.Supp. at p. 1276.)

Nothing in the record in the present case suggests requiring Mangini to post a bond would "deny access to judicial review," or would somehow "close the courthouse door." The preliminary injunction in this case was extremely narrow. The court simply enjoined Durand from selling three patterns of its leaded crystal stemware unless Durand provided its customers with copies of a notice warning about exposure to lead. Even this limited restriction was largely eliminated two weeks later when Durand submitted to the Attorney General testing data concerning the three patterns, and the Attorney General said that two of the three could be sold without a Proposition 65 warning. Thus, the practical effect of the injunction was simply to require Durand to provide a warning with its "Florence Flute" champagne glass. Even if there is a run on leaded crystal stemware in shops throughout California, whether many of this particular pattern would be involved is problematical. Any potential bond is likely to be modest. Furthermore, nothing in the record suggests Mangini was unable to post a bond. Mangini is not the nonprofit plaintiff we commonly see in environmental litigation. She is a gainfully employed practicing attorney. In the absence of some evidence showing a bond would be an impediment to maintaining the action,

we see no reason to even reach the federal rule. In sum, even if the federal rule is applicable in California, it would not assist Mangini here.[2]

Finally, we must observe that we have considered this issue before. In 1987, and then again in 1993, this court (Division Five) issued published opinions which expressly adopted the federal rule on bonding as a condition of receipt of preliminary injunctive relief in environmental litigation. Our Supreme Court ordered both opinions decertified for publication. (See *Libeu v. Johnson** (Cal.App.); *Albion River Watershed Protection Assn.* v. *Superior Court*† (Cal.App.)) While we might interpret those depublications as meaning our prior opinions were "wrong in some significant way" (see Grodin, *The Depublication Practice of the California Supreme Court* (1984) 72 Cal. L.Rev. 514, 515), rule 979(e) of the California Rules of Court cautions that a depublication order "shall not be deemed an expression of opinion of the Supreme Court of the correctness of the result reached by the decision or of any of the law set forth in the opinion."[3] Recent Supreme Court cases suggest that rule 979(e) means just what it says. (See *Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242, 254, fn. 9 [19 Cal.Rptr.2d 698, 851 P.2d 1307] [The majority acknowledges that its analysis was adapted from a depublished Court of Appeal decision.]; see also *People* v. *Saunders* (1993) 5 Cal.4th 580, 607-608 [20 Cal.Rptr.2d 638, 853 P.2d 1093] (dis. opn. of Kennard, J.) [Justice Kennard suggests that the reasoning adopted by the majority was consistent with several prior depublished decisions of appellate courts.].) We do not cite our prior decisions as critical of the high court's depublication procedure, but simply to illustrate an important fact. This division has now been asked to address the same injunction issue at least three times. We doubt that we are the only appellate court or division thereof in this state which has faced or will face the same issue. To date this recurring issue remains unresolved: Do courts of this state, under the provisions of section 529 *or* otherwise, have the power to order a nominal bond or to waive *any* bonding requirement as a condition to issuing a preliminary

---

[2]In light of this conclusion, we need not decide whether the court's order violated the constitutional separation of powers by its submission to the Attorney General of the issue (following analysis of test data) of Proposition 65 warning requirements.

*Reporter's Note: Opinion (A034872) deleted upon direction of Supreme Court by order dated January 7, 1988.

†Reporter's Note: Opinion (A060923) deleted upon direction of Supreme Court by order dated October 14, 1993.

[3]In analogous circumstances, our Supreme Court has explained the significance of a denial of review as follows: "Although this court's denial of a hearing is not to be regarded as expressing approval of the propositions of law set forth in an opinion of the District Court of Appeal or as having the same authoritative effect as an earlier decision of this court [citations], *it does not follow that such a denial is without significance as to our views* [citations]." (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865], italics added.)

injunction in "environmental" litigation? Our trial courts, counsel who must provide legal advice, and the litigants of this state will continue to debate this issue until it is finally resolved.

III. DISPOSITION

The preliminary injunction is reversed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied January 23, 1995.