Filed 7/23/13

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, | B246901 |
| Petitioner and Defendant, | (Los Angeles County Super. Ct. No. BC371597) |
| v. | |
| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, | |
| Respondent; | |
| AUDREY WILSON et al., | |
| Plaintiffs and Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  John Shepard Wiley, Jr., Judge.

Petition granted.

Seyfarth Shaw, George E. Preonas, Andrew M. Paley and Sheryl L. Skibbe;

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., Julian W. Poon,

Christopher Chorba, Kirsten R. Galler and Neta Levanon for Petitioner and Defendant.

No appearance for Respondents.

R. Rex Parris Law Firm, R. Rex Parris, Alexander R. Wheeler,

Jacob L. Karczewski and John M. Bickford; Altshuler Berzon, Michael Rubin,

Peder J. Thoreen and Matthew J. Murray for Plaintiffs and Real Parties in Interest.

_____

The trial court in the instant matter granted a motion for class certification based solely on a single appellate court opinion. Shortly after the class certification motion was granted, the Supreme Court depublished the appellate court opinion on which the trial court had relied. By this time, the 10-day period for the defendant to seek reconsideration of the trial court's order under Code of Civil Procedure section 1008, subdivision (a) had lapsed. The defendant therefore requested that the trial court exercise its discretion under Code of Civil Procedure section 1008, subdivision (c) to reconsider the order granting class certification on its own motion. That subdivision permits a trial court to reconsider its prior order if it determines "there has been a change of law" that warrants reconsideration. In this case, the trial court determined that it was *precluded* from granting reconsideration on the basis that the Supreme's Court's order depublishing the sole authority on which it had previously relied did not, in fact, constitute a "change of law."

The defendant sought review by petition for writ of mandate. We issued an order to show cause and will now grant the petition. The Supreme Court's act of depublishing a case on which a prior court order relied can, in fact, constitute a change of law. In this case, where the *sole* legal basis for the trial court's order was the depublished decision, the depublication order necessarily constituted a change of law.

### FACTUAL AND PROCEDURAL BACKGROUND

The instant case was brought against Farmers Insurance Exchange (Farmers) by three of its claims adjusters, alleging, on behalf of a class of claims adjusters employed by Farmers, various violations of the Labor Code, including a failure to pay overtime

3

and a failure to provide meal and rest breaks.  The operative complaint is the second

amended complaint, filed February 20, 2012.  A major issue in the case will be if the

plaintiff employees are subject to these requirements of the Labor Code, or if, in the

alternative, they are exempt administrative employees.

The complaint seeks to define the class as "all persons who, since May 18, 2003,

have been employed, or are currently employed, by [Farmers] in California as a Claims

Representative who were paid as exempt employees during the Class Period, as the

same are defined pursuant to statute and/or California or federal regulatory

determination, and were not included as class members in the *Bell v. Farmers Insurance

Exchange*[1] judgment."

On March 26, 2012, the plaintiffs moved for certification of the class.[2]  They

argued that class certification was appropriate in this case as all of the putative class

members perform (or performed) a finite and uniform grouping of job duties.  As such,

plaintiffs argued, a court could determine on a class basis whether the class members

were exempt administrative employees.

On July 27, 2012, Farmers opposed the motion.  Farmers argued that class

certification was inappropriate because the job duties performed by members of the

purported class varied tremendously.  As such, Farmers argued, individual issues

---

[1]     There have been several appellate opinions in the *Bell v. Farmers Insurance Exchange* matter.  That case involved Farmers's claims adjusters who adjust claims under personal, as opposed to commercial, insurance policies.

[2]     At the time, they also sought certification of seven subclasses, comprised of seven different types of commercial claims adjusters.

4

predominated over class issues and class certification was therefore inappropriate. Farmers also argued the merits of the exemption issue, taking the position that all of its adjusters were, in fact, exempt. Farmers argued that there was no basis for class certification as there was no common issue regarding liability.

A few days before Farmers filed its opposition, Division One of the Second Appellate District issued its published opinion in *Harris v. Superior Court* (July 23, 2012, B195121, B195370) (*Harris*).[3] That opinion held that a class of claims adjusters was appropriately certified and, furthermore, that the members of the class were not exempt. Farmers recognized that *Harris* had been filed, and mentioned the opinion briefly in its opposition, seeking permission to further address the case in a sur-reply.[4]

On September 28, 2012, plaintiffs filed their reply in support of class certification.[5] To say that the reply relied heavily on *Harris* would be an understatement. Plaintiffs argued that *Harris* was directly on point and controlled the disposition of the class certification motion. Plaintiffs argued that *Harris* was "controlling law for this Court both on merits and class certification issues." Plaintiffs categorized Farmers's opposition as simply urging the court "to adopt arguments that the *Harris* . . . court has already expressly rejected."

---

[3]  Before the trial court, the parties referred to this opinion as "*Harris II*," to distinguish it from an earlier Supreme Court opinion in the matter. In the instant proceeding, the parties refer to it as "*Harris III*," to distinguish it from both the earlier Supreme Court opinion and the first appellate opinion. As we refer to neither of the earlier opinions, we simply refer to this case as "*Harris*."

[4]  It does not appear that such permission was granted.

[5]  At this point, the plaintiffs withdrew their request to certify subclasses.

A petition for review was filed in *Harris* on September 4, 2012. On October 5, 2012, the day of the hearing on the class certification motion, the parties in the instant matter filed a joint statement setting forth their positions on the issue of whether the trial court should resolve the class certification motion immediately or defer ruling until the Supreme Court had ruled on the petition for review in *Harris*. Farmers, not surprisingly, requested that the court defer ruling. Plaintiffs disagreed, stating, of *Harris*, "as long as it remains published the Court is required to follow it . . . . " The trial court ultimately chose to resolve the matter before it, without waiting for the Supreme Court to rule on the petition for review in *Harris*.

Before the hearing, the court issued its tentative ruling, which stated, in its entirety[6]: "The class certification motion is granted. [¶] The issue is whether insurance adjusters are exempt. *Harris v. Superior Court* (2012) 207 Cal.App.4th 1225, 1231, 1233-1248 said no: not exempt. The wage and hour laws apply to them: meal breaks, rest breaks, and all the rest. Farmers dismisses this 'erroneous analysis' [citation], but this appellate law compels certification. [¶] *Harris* held that the alleged heterogeneity of the class was no reason to deny class certification. (*Harris v. Superior Court* (2012) 207 Cal.App.4th 1225, 1247-1248.) Farmers offers no evidentiary citations to distinguish that holding, which governs."

At the hearing on the motion, the trial court emphasized that *Harris* controlled the disposition of the motion. The court stated, "Farmers will have many arguments to

---

[6]    The trial court also ruled on another matter, not before us in the instant writ proceeding.

make in its appellate attack on my ruling today. It in effect will be an opportunity to weigh in on the July *Harris* ruling. [¶] So, you've made a complete record here. You can say anything you want now, but I believe my role is severely confined in terms of any kind of legal analysis." The trial court added that it was aware that Farmers argued that *Harris* conflicted with other Court of Appeal opinions. The court stated, however, that it would not attempt to resolve that dispute. The court stated, "You know, it's an amusing rule really for a trial court to consider that when there's an argument that there's a conflict between the Court of Appeal and the Court of Appeal, it's some lonesome trial judge somewhere who's supposed to say: Oh, yes, I'm appointed [to] the Supreme Court for temporary purposes here and I will make the call on this. [¶] That is [*Auto Equity*].[7] I'm not persuaded the conflict is so sharp as to require that exercise of supposed authority by me. I'm going to defer to your ability before the Court of Appeal to make an argument to folks who can look at another Court of Appeal opinion and decide whether [it's] impressive or not."

At one point, the trial court stated, to Farmers's counsel, "I just think it would be akin to trial court insubordination for a case such on all fours, factually speaking, to come down from the Court of Appeal in July and for me to reach some other result on some other ground." The court continued, "one of the great advantages of living in

---

**7**    *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450 held that "[c]ourts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court. [Citations.]" (*Id*. at p. 455.) It also stated, "the rule under discussion has no application where there is more than one appellate court decision, and such appellate decisions are in conflict. In such a situation, the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions." (*Id*. at p. 456.)

a society governed by the rule of law is the law is predictable. I think if you asked a hundred objective observers what would a trial court do with an insurance company adjuster class proposal only months after [*Harris*], the overwhelming super majority of objective observers would say it would reach the same result. And if it didn't, something smells funny."

Plaintiffs did not disagree with the court's tentative opinion. However, plaintiffs' counsel did note that the tentative opinion stated, "The issue is whether insurance adjusters are exempt," when, in fact, the issue was whether the insurance adjusters *in this case* were exempt, not whether insurance adjusters *in general* were exempt. The court agreed, and added the word "these" before "adjusters," before adopting its tentative opinion.[8]

The trial court made its ruling at the October 5, 2012 hearing. On October 24, 2012, the Supreme Court denied the petition for review in *Harris*, but ordered the opinion not to be officially published. As a result of the depublication order, the *Harris* opinion could not "be cited or relied on by a court or a party in any other action." (Cal. Rules of Court, rule 8.1115(a).) Because the trial court had relied heavily on

---

[8] The tentative opinion as modified, read: "The issue is whether these insurance adjusters are exempt. *Harris v. Superior Court* (2012) 207 Cal.App.4th 1225, 1231, 1233-1248 said no: not exempt." The insertion of "these" makes the second sentence somewhat problematic. *Harris* did not say *these* are adjusters are exempt; *Harris* did not have *these* adjusters before it. *Harris* could decide only whether the adjusters in *Harris* were exempt. In order for the trial court's opinion to make logical sense, we must imply a factual finding that the adjusters in the instant case were similarly situated to the adjusters in *Harris*.

8

*Harris*, which could no longer be relied upon, Farmers requested that the trial court reconsider its order on the class certification motion.

Code of Civil Procedure section 1008, subdivision (a) prohibits a party from moving for reconsideration after 10 days have passed from service of notice of entry of the original order.[9]  In this case, 19 days had passed, making such a motion untimely.  However, Code of Civil Procedure section 1008, subdivision (c) permits a court "on its own motion" to choose to reconsider a prior order if "at any time" the court "determines that there has been a change of law that warrants" reconsideration.  On October 26, 2012, Farmers filed a motion requesting the court to exercise its discretion under Code of Civil Procedure section 1008, subdivision (c), to reconsider its order certifying the plaintiff class.[10]

Plaintiffs opposed the motion, arguing that it was procedurally barred as Farmers had not sought reconsideration within 10 days of the earlier ruling.  Curiously, plaintiffs

---

[9]     In the instant case, notice was waived at the hearing.

[10]     The motion was not, strictly speaking, procedurally proper.  While a party has the right to "communicat[e] the view to a court that it should reconsider a prior ruling" (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108), the party should not "file a written *motion* to reconsider" if it cannot satisfy the procedural requirements of Code of Civil Procedure section 1008.  (*Ibid.*)  "The court need not rule on any suggestion that it should reconsider a previous ruling and, without more, another party would not be expected to respond to such a suggestion."  (*Ibid.*)  If a court is "seriously concerned" that its prior ruling might have been erroneous "and thus that it might want to reconsider that ruling on its own motion," (even if at the suggestion of a party), the court should inform the parties, solicit briefing, and hold a hearing.  (*Ibid.*)  In the instant case, it is apparent that the trial court was sufficiently concerned about the effect of the depublication of *Harris* that it considered the parties' briefing and held a hearing on the issue.

conceded that the motion was, in fact, based on a change in the law.[11]  In addition to arguing that the motion was procedurally barred, plaintiffs argued that, in any event, the *Harris* opinion was well reasoned.[12]  Plaintiffs further argued that, even in the absence of the *Harris* opinion, they were entitled to class certification.

The hearing was held on January 22, 2013.  Before the hearing, the trial court issued its tentative opinion, which relied on California Rules of Court, rule 8.1125(d).  That rule states, "A Supreme Court order to depublish is not an expression of the court's opinion of the correctness of the result of the decision or of any law stated in the opinion."  The trial court's tentative ruling quotes the rule, then states, "According to the California Rules of Court, then, Supreme Court depublication of an opinion does not constitute a change of law.  [¶]  For this reason, the motion is denied."

At the hearing on the motion, Farmers's counsel attempted to elicit from the court if the court was denying reconsideration on the basis that it had no jurisdiction to reconsider its order because there had been no change in the law, or if, in the alternative, the court was denying reconsideration because it was adopting the rationale of the

---

[11]  Neither Farmers nor the trial court seemed to notice the concession.  Plaintiffs stated that the reconsideration motion "while based on a change in binding case law – is procedurally barred . . . ."

[12]  Plaintiffs stated that while *Harris* "is no longer published, its analysis and careful reasoning of the administrative exemption are still the most relevant and detailed of any Court of Appeal decision to date in the State of California."  Because the issue before the trial court was the effect of the depublication of the *Harris* opinion, it is clear that the parties were necessarily permitted to cite to *Harris* in their arguments, although in technical violation of California Rules of Court, rule 8.1115(a).  However, to the extent plaintiffs argued that *Harris*'s "analysis and careful reasoning" were "the most relevant and detailed of any Court of Appeal decision," it appears that plaintiffs were *relying* on *Harris*, in violation of California Rules of Court, rule 8.1115(a).

10

depublished *Harris* opinion as its own. It was clear from the trial court's responses that the former was the case; the court simply concluded that depublication of an opinion did not constitute a change in the law. The court stated, "All that's before me today is a motion for reconsideration. And it would be proper for me to reconsider only if there's been a change in the law. There's been no change in the law according to a California Rule of Court laid down before this dispute arose."

Thereafter, the court stated that, when it relied on *Harris* previously, it had done so both because *Harris* was controlling precedent and because the logic of the opinion was authoritative. Farmers's counsel then expressed confusion, as he had understood the trial court's comments at certification to mean that the court felt obligated to follow *Harris* even if the court disagreed. The court then clarified, "There [are,] therefore, two reasons why I decided the way I did last time. One, there was a holding to that effect, that I venture was indistinguishable from the facts of this case. And there was a logic supporting that holding set forth by Justice [Mallano]. [¶] Is it contestable? Well, Justice Roth[s]child thought so,[13] and you think so. And I may well think so as someone other than a trial judge while I'm out wandering around in [the] park musing about the world, I may think to myself[,] you know[,] there's a number of things wrong with that logic. [¶] But nobody really cares what I think wandering around in the park. When I put on a robe and I sit on a bench, my job is to issue the most predictable ruling according to law that I can. So that if you have 100 trial judges looking at a situation, the overwhelming super majority come out in the predictable way, that's what we mean

---

**13**    Justice Rothschild had concurred in part and dissented in part from *Harris*.

11

by the rule of law. [¶] Now, since that ruling by the trial court, something has happened. And you say it warrants reconsideration, but I say that's only true if there's been a change in law. And today my analysis is based on a California Rule of Court, there's been no change in the law." Indeed, the trial court cut off a further attempt of Farmers's counsel to argue, stating, "Stop. Please. I have no jurisdiction to consider this argument unless there's been a change in the law."[14]

The trial court denied the motion and adopted its tentative ruling. The court suggested that Farmers appeal, stating, "[w]e need some appellate guidance here . . . . "

Thereafter, Farmers sought an order from the court under Code of Civil Procedure section 166.1. That provision permits a trial court to indicate "in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation." The court granted such certification. At the hearing on the Code of Civil Procedure section 166.1 request, the court stated, "I have never encountered a situation where the lynch pin authority, the only one I ci[t]ed . . . was depublished after my ruling." The court added, "I'd like the Court of Appeal behind closed doors to puzzle over the meaning of a Supreme Court depublication. They don't have to, as I have, ponder the Rule of Court and its apparent

---

[14] Farmers's counsel attempted to argue that there had been a change in the law. The trial court asked counsel for authority for the proposition that depublication of an opinion constituted a change in the law. Farmers's counsel replied that the depublished case "ceases to exist." The court responded, "No, no. I'm looking for governing law[,] here. They have cited a Rule of Court, what do you cite in terms of governing law, . . . something from a Court of Appeal[?]"

clash with street wisdom among legal counselors about the significance of depublication."  Finally, the court stated, "I ruled against the defense last time saying there's been no change of law according to the law.  [¶]  Given everything that's happened, I just think it's an awfully unusual sequence of events.  For that reason, I would, for whatever it's worth, certify the question."

On February 15, 2013, Farmers filed a petition for writ of mandate, seeking relief from both the trial court's denial of reconsideration and from its grant of class certification.  After preliminary briefing, we issued an order to show cause.  Additional briefing was filed.  We now grant the petition.

### *ISSUES PRESENTED*

The main issue raised by this writ petition is whether the depublication of an opinion can constitute a change in the law sufficient to warrant reconsideration.  We conclude that it can, and that, in the unusual circumstances presented by this case, it necessarily did.  For that reason, we will direct the trial court to vacate its order denying reconsideration and to, instead, grant reconsideration and reconsider the class certification motion in the absence of the now-depublished *Harris* decision.  We also address, and reject, plaintiffs' contentions that a denial of reconsideration under Code of Civil Procedure section 1008, subdivision (c) is never subject to appellate review.

The parties have also briefed, at great length, the merits of depublished *Harris* opinion, on the theory that the trial court may have adopted the rationale of *Harris* as its own.  The predicate for such a discussion is simply untrue.  While the trial court noted a certain respect for the analysis in *Harris*, the court never adopted the rationale as its

13

own. Instead, as we have set forth at length above, the trial court followed *Harris* as controlling precedent at the class certification hearing, and denied reconsideration on the basis that *Harris's* depublication did not constitute a change in the law. Thus, we do not have before us a trial court opinion adopting as its own the *Harris* analysis, and there is, therefore, no reason for this court to express an opinion on the analysis in a depublished Court of Appeal opinion.[15] Under the circumstances, we also decline the parties' invitation to independently consider whether certification of the class was appropriate. The trial court, in the first instance, should reconsider the class certification motion in the absence of the *Harris* opinion.[16]

## DISCUSSION

### 1. *Standard of Review*

A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard. (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.) All

---

[15] We again note that under California Rules of Court, rule 8.1115(a), a depublished opinion "must not be cited or relied on by a court or a party in any other action." If depublication means anything, it means that this court has no cause to *ever* agree or disagree with *Harris*. *Harris* simply does not exist. This court may, at some time in the future, be presented with a trial court order using a similar course of reasoning as that adopted by the appellate court in *Harris*. Similarly, this court may be presented with a ruling on a class certification motion which follows a course of reasoning rejected by the appellate court in *Harris*. In either situation, this court would rule on the merits of the order before it, and not express an opinion, one way or the other, on *Harris* itself. But neither situation is before us now. (If, and when, such a situation is presented, the parties would be prevented by California Rules of Court, rule 8.1115(a) from citing to *Harris*, and would be prevented by California Rules of Court, rule 8.1125(d) from suggesting that the depublication of *Harris* implied Supreme Court disapproval of that opinion.)

[16] Nothing in this opinion should be read as expressing an opinion on the merits of the class certification motion.

14

exercises of discretion must be guided by applicable legal principles, however, which are derived from the statute under which discretion is conferred. (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 15; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298.) If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. (*F.T. v. L.J.*, *supra*, 194 Cal.App.4th at pp. 15-16.) Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. (*Ibid.*)

### 2. *Reconsideration on the Court's Own Motion*

Under Code of Civil Procedure section 1008, subdivision (c),[17] if the court "at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion." This subdivision does not define what constitutes a "change of law," and its terminology gives the court very broad power. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 9:340, p. 135.) In addition, the court may consider a number of

---

[17]     We are here concerned only with a court's power to grant reconsideration under Code of Civil Procedure section 1008, subdivision (c). A court also possesses an *inherent* authority to reconsider its interim rulings on its own motion. Although Code of Civil Procedure section 1008, subdivision (c), could be read as a statutory limitation on the inherent power of a court to reconsider its own rulings, the Supreme Court has rejected that interpretation. (*Le Francois v. Goel, supra,* 35 Cal.4th at pp. 1105-1107.) Thus, it appears that a trial court can, sua sponte, reconsider a prior ruling which the court concludes was erroneous, even in the absence of a change in law sufficient to satisfy Code of Civil Procedure section 1008, subdivision (c). (*Le Francois v. Goel, supra,* at p. 1103; *In Re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1311-1312.)

15

factors in determining whether to exercise its discretion, including the importance of the change of law, the timing of the motion, and the circumstances of the case. (See *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 769 (*Phillips*).)

In *Phillips*, the trial court denied a motion by Sprint to compel arbitration based on a contract provision it found unenforceable under then-controlling law. (*Phillips, supra,* 209 Cal.App.4th at p. 764.) After the U.S. Supreme Court abrogated the California Supreme Court opinion on which the trial court had relied, the trial court granted Sprint's renewed motion to compel arbitration, and in the alternative, exercised its discretion to reconsider its order based on the change of law occasioned by the new opinion under Code of Civil Procedure section 1008, subdivision (c). (*Phillips, supra,* 209 Cal.App.4th at p. 765.) In its decision, the trial court emphasized that, had the case been poised for trial, it might not have exercised its discretion to rehear the issue, but since the suit was still distant from trial and so little advanced, it was reasonable to reconsider such a fundamental matter. (*Id.* at p. 769.) On appeal, the Court of Appeal affirmed this decision, reasoning that reconsideration was proper in light of the significance of the new law, the distance of the trial and the failure to make any showing of prejudice to the other parties. (*Ibid.*)

In the instant case, the trial court declined to grant reconsideration on the basis that the depublication of the *Harris* opinion *could not* constitute a change of law within the meaning of Code of Civil Procedure section 1008, subdivision (c). It considered no other factors, and relied solely on California Rules of Court, rule 8.1125(d) for this conclusion. As we shall discuss below, this was error.

16

3.      *The Denial of Reconsideration is Reviewable*

Before we reach the merits of the issue, however, we first address plaintiffs'

contention that a trial court's discretionary determination *not* to grant reconsideration on

its own motion is not subject to review by means of a petition for writ of mandate.  We

do not doubt that, under usual circumstances, this is the general rule.[18]  In *International*

*Ins. Co. v. Superior Court* (1998) 62 Cal.App.4th 784, 786, a plaintiff successfully

obtained reconsideration of a trial court's grant of summary adjudication, based on

a request for the court to find a change of law under Code of Civil Procedure

section 1008, subdivision (c).  When the defendant sought writ review, the Court of

Appeal denied the petition, stating, "We see no reason why, without more, a trial court's

decision about what is or isn't a 'change of law' ought to justify writ relief."

(*International Ins. Co. v. Superior Court, supra,* 62 Cal.App.4th at p. 788.)  The court

added, "We seldom use extraordinary writs to review interlocutory summary

adjudication orders (grants or denials) and we see no reason why, absent other

compelling facts, we ought to use the writ procedure to review orders that grant or deny

reconsideration of a summary adjudication order based upon a 'change of law.' "  (*Ibid.*)

The instant case is distinguishable, requiring a different result.  In this case, we

have the "[something] more" and "other compelling facts" which were missing from

*International Ins. Co. v. Superior Court, supra,* 62 Cal.App.4th at p. 788.  Specifically,

we are presented with a trial court which denied reconsideration, not as an exercise of

---

[18]      Indeed, we suspect the judicial system would grind to a halt if parties routinely requested trial courts to sua sponte grant reconsideration of unfavorable rulings, and sought writ review every time a trial court declined to exercise its discretion to do so.

17

discretion, but based solely on its interpretation of a court rule.  Moreover, the trial court expressed its own concerns regarding its interpretation of the rule of court, recommending that Farmers seek appellate review, and certifying the matter under Code of Civil Procedure section 166.1 as presenting "a controlling question of law as to which there are substantial grounds for difference of opinion."  Under these circumstances, the writ petition does not seek review of a trial court's routine determination to not exercise its discretion, but review of a potentially erroneous interpretation of a rule of court.  Writ review is therefore appropriate.

4.      *Depublication of Controlling Authority Can Constitute a Change of Law*

Under California Rule of Court 8.1125(c), the Supreme Court may depublish an opinion at any time in response to a request for depublication or on its own motion. Under California Rule of Court 8.1125(d), (renumbered from rule 979(e)), a depublication order is not "an expression of the court's opinion of the correctness of the result of the decision or of any law stated in the opinion."  While conventional wisdom may suggest that the Supreme Court would not depublish an opinion unless it believed the opinion was wrong in some significant way, "[r]ecent Supreme Court cases suggest that rule 979(e) means just what it says.  (See *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254, fn. 9 [] [The majority acknowledges that its analysis was adapted from a depublished Court of Appeal decision.]; see also *People v. Saunders* (1993) 5 Cal.4th 580, 607-608 [] (dis. opn. of Kennard, J.) [Justice Kennard suggests that the reasoning adopted by the majority was consistent with several prior depublished decisions of appellate courts.].)"  (*Mangini v. J.G. Durand Internat.* (1994)

18

31 Cal.App.4th 214, 219.)  In short, California Rules of Court, rule 8.1125(d) reminds courts and litigants that Supreme Court depublication does not necessarily constitute disapproval.

Nonetheless, though depublication may not be an expression of disapproval by the Supreme Court, depublication orders are not without effect.  A depublished opinion "must not be cited or relied on by a court or a party in any other action."  (Cal. Rules of Court, rule 8.1115(a).)  It is well-established that, under this rule, nonpublished opinions have no precedential value.  (*Nelson v. Justice Court* (1978) 86 Cal.App.3d 64, 66 ["Judicial decisions which the court and counsel were precluded from citing necessarily did not constitute authority binding upon the justice court"]; *Heaton v. Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421, 431 [holding that the previous version of 8.1115(a), by explicitly disallowing citation to unpublished opinions, thereby established that they are not to be considered of precedential value].  See also *Ramirez v. Moran* (1988) 201 Cal.App.3d 431, 437, fn. 4; *Powers v. Sissoev* (1974) 39 Cal.App.3d 865, 874, fn. 8.)

Without precedential value, a depublished opinion is no longer part of the law and thus ceases to exist.  When a court decision is made on the basis of an opinion that is subsequently depublished, the law justifying that decision has necessarily changed.

The California Supreme Court has addressed this disappearance of authority when discussing the effects of depublication caused by a grant of review.  In that context, it is a well-established principle of law that a grant of review by the Supreme Court nullifies the opinion and causes it to no longer exist.  (*Knouse v. Nimocks* (1937)

19

8 Cal.2d 482, 483-484; *People v. Ford* (1981) 30 Cal.3d 209, 215-216.) In *Knouse v. Nimocks*, the Supreme Court granted review because the record showed that a justice who wrote the opinion in the Court of Appeal had ruled upon the case's demurrer in the trial court, and was therefore disqualified from participating in the appeal. (*Knouse v. Nimocks, supra,* at p. 483.) The Supreme Court stated, "Just what effect this disqualification . . . might have had upon the decision of the District Court of Appeal, had we not granted a transfer of said cause, is now a matter of no consequence. The opinion and decision of the District Court of Appeal, by our order of transfer, have become a nullity and are of no force or effect, either as a judgment or as an authoritative statement of any principle of law therein discussed." (*Id.* at pp. 483-484.) Without some further act of approval or adoption by the Supreme Court, the opinion and decision were "of no more effect as a judgment or as a precedent to be followed in the decision of legal questions that may hereafter arise than if they had not been written." (*Id.* at p. 484.) Though a depublished opinion, unlike an opinion on which review was granted, still governs the dispute between the parties involved, the effect is the same for the purposes of precedential value: depublication nullifies the opinion as precedent and it is as if the opinion had not been written.[19]

---

[19]     Plaintiffs cite to *American Economy Ins. Co. v. Reboans, Inc.* (1994) 900 F.Supp. 1246, 1256-1257 (*American Economy*) in support of the proposition that depublication of an opinion is an insufficient change of law to warrant reconsideration. *American Economy* was an action regarding an insurer's duty to defend an insured against claims that the company had infringed on trademarks. (*Id.,* at p. 1255.) The policy covered, among other losses, suits based on infringement of copyright, title or slogan. (*Ibid.*) The trial court issued an order in May 1994 (hereafter May Order) holding that the insurer had no duty to defend the company against trademark infringement claims. (*Ibid.*)

20

Because depublication renders the opinion non-citeable and removes its precedential value, it nullifies the opinion and renders it nonexistent. (See *Heaton v. Marin County Employees Retirement Bd., supra*, 63 Cal.App.3d at p. 431; *Knouse v. Nimocks*, *supra,* 8 Cal.2d at pp. 483-484.)  In this case, *Harris* existed at the time of the order granting class certification then subsequently was depublished, thereby disappearing from the law and changing the applicable legal context surrounding the decision.  Thus, it constitutes a change in the law that had existed at the time of the order.  The trial court reasoned that because depublication does not express approval or

---

Then, in December 1994 (hereafter December Order), the trial court granted reconsideration of the May Order, stating that a new opinion from the California Court of Appeal, *Clary Corp. v. Union Standard Ins. Co.* (Aug. 30, 1994) G013805 (*Clary*), had changed the controlling law.  (*American Economy, supra,* at p. 1251.)  In the December Order, the court held that the insurer had a duty to defend the company against trademark infringement claims.  (*Id.* at p. 1255.)  However, just before the December Order was filed, the California Supreme Court denied review of *Clary* and ordered that it be depublished.  (*Id.* at p. 1256.)  The court requested briefing on the effect of depublication, but ultimately upheld the December Order and denied the motion for reconsideration under Federal Rule of Civil Procedure, rule 60(b)(6).  (*Id.* at pp. 1256, 1258.)

Although the federal district court upheld the December Order and denied the motion for reconsideration, its reasoning was not based on the depublication of *Clary* being insufficient to constitute a change of law.  In the December Order, the court had explicitly stated that it was not relying solely on *Clary*, but "apply[ing] the reasoning of *Clary*." (*American Economy, supra,* 900 F.Supp. at p. 1252.)  The court constructed its own reasoning and relied on a number of other authorities in reconsidering the May Order and changing its prior ruling.  (*Id.* at pp. 1251-1255.)  Accordingly, in denying reconsideration of the December Order, the court noted that depublication was not an expression of the Supreme Court's opinion on *Clary*, and, in any event, there were grounds for the decision independent of *Clary*.  (*Id.* at p. 1256.)  *American Economy* is thus distinguishable.  It did not involve a court concluding, as a matter of law, that depublication *cannot* constitute a change in the law; instead, the court acknowledged the depublication of the opinion, considered its effect, and ultimately concluded that the prior order was sufficiently supported even in the absence of the precedential authority of the depublished case.

21

disapproval by the Supreme Court, it is not a change of law. But a change of law had occurred simply from the fact that the existing body of precedential law had changed, irrespective of the Supreme Court's reasons for changing it. Thus, the trial court erred in concluding that the depublication of *Harris* could not constitute a change in the law sufficient to warrant reconsideration under Code of Civil Procedure section 1008, subdivision (c). As such, it misunderstood the scope of its discretion.

        5.      *Reconsideration Should Have Been Granted*

Rather than remanding for the trial court to exercise its discretion to determine, under the proper standard, whether reconsideration should be granted, we conclude that, under the unique circumstances of this case, it would be an abuse of discretion to deny reconsideration. Each of the factors considered by the *Phillips* court weighs heavily in favor of reconsideration. These factors are: the importance of the change of law, the timing of the motion, and the circumstances of the case.

The importance of the change of law occasioned by the depublication of *Harris* cannot be understated. *Harris* provided the sole legal authority for the trial court's grant of class certification. The court not only relied exclusively on *Harris*, but reasoned that because *Harris* controlled the decision, it was severely confined in terms of any independent legal analysis. When Farmers argued that *Harris* conflicted with other Court of Appeal opinions, the court did not attempt to resolve that dispute. Instead, the court found that "it would be akin to trial court insubordination" for it "to reach some other result on some other ground," in light of *Harris*. As *Harris* has ceased to exist for

22

precedential purposes, the stated legal basis for the trial court's class certification order has disappeared.

The other factors also support reconsideration. The timing of the reconsideration request was prompt. The trial court granted class certification on October 5; the Supreme Court depublished *Harris* on October 24; and Farmers requested reconsideration two days later. There was no delay. Moreover, there was no prejudice. When the trial court initially granted class certification, the court stayed the resolution of pending discovery issues and class notice for 20 days,[20] which stay was later extended by the trial court to allow the instant writ petition to be filed.

In short, the entire legal justification for the trial court's certification order disappeared with the depublication of *Harris*, and nothing had occurred in the case in reliance on the certification order. Reconsideration should have been granted. (Cf. *Valdez v. Himmelfarb* (2006) 144 Cal.App.4th 1261, 1275 [holding that an appellate ruling on the correct statute of limitations was a change in the law that mandated reconsideration of sanctions imposed on a plaintiff for violating the statute of limitations]; *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 739 [holding that the Supreme Court resolution of a previously disputed issue constituted a change in the law mandating reconsideration]).

---

[20]    Although the trial court rejected Farmers's suggestion to delay ruling on the class certification motion until the petition for review in *Harris* had been resolved, the court accepted Farmers's argument that notice to the class should be stayed until the Supreme Court ruled on the petition for review in *Harris*.

23

## *DISPOSITION*

The petition for writ of mandate is granted. Let a writ of mandate issue directing the trial court to vacate its order denying reconsideration of the class certification motion, and to issue a new and different order granting reconsideration of the motion in the absence of the *Harris* opinion. Farmers shall recover its costs in this writ proceeding.

### *CERTIFIED FOR PUBLICATION*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

24