Filed 8/29/13  Smith Chevrolet v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SMITH CHEVROLET CO. INC. et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF STANISLAUS COUNTY, <br><br> Respondent; <br><br> ROXANNE CARDOVA et al., <br><br> Real Parties in Interest. | F065171 <br><br> (Super. Ct. No. 311470) <br><br><br> **OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of mandate.

Ronald W. Hillberg, Michael J.F. Smith, and Elizabeth Kolar for Petitioners.

No appearance for Respondent.

Kemnitzer, Barron & Krieg, LLP and William M. Krieg for Real Parties in Interest.

-ooOoo-

## INTRODUCTION

This writ proceeding concerns the meaning and effect of our decision in *Paz v. Sanders Oldsmobile-Cadillac, Inc.* (Jan. 9, 2007, F048438 [nonpub. opn.]) and whether the trial court should have dismissed this lawsuit pursuant to the statutes that require an action to be brought to trial within three years after an appellate court has reversed and remanded for a new trial. (Code Civ. Proc., §§ 583.320, subd. (a)(3) & 583.360, subd. (a).) Specifically, we must determine or, more accurately, clarify whether our 2007 decision *remanded the action for a new trial* for purposes of the dismissal statutes.

Our 2007 decision determined that the plaintiffs lacked standing and reversed the judgment that held the defendants violated California's unfair competition law (UCL).[1] In addition, we "remanded to the trial court for such proceedings as may be appropriate pursuant to *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235 [(*Branick*)]." (*Paz v. Sanders Oldsmobile-Cadillac, Inc, supra,* F048438, at p. 20.) The *Branick* decision held that (1) plaintiffs who lost standing as a result of the passage of Proposition 64 were not barred from seeking leave to amend their UCL claims to add new plaintiffs who met the narrower standing requirements and (2) the trial court should decide any motion to amend by applying the established rule governing leave to amend and the relation back of amended complaints. (*Branick*, *supra*, at p. 239.)

Approximately five years after the case was remanded, defendants moved to dismiss on the ground that the matter was not brought to trial within the three-year period established by statute. The trial court denied the motion. Defendants filed a petition for a writ and we issued an order to show cause.

Our 2007 decision to reverse and remand was intended to take the UCL claim back to the pleading stage. We did not intend to preserve any part of the trial court's statement of decision or judgment regarding the UCL claim. Our reversal and remand

[1] Business and Professions Code section 17200 et seq.

2.

meant that the decision and judgment no longer had any force or effect. In short, we intended to place the UCL claim "at large." Assuming the trial court granted the motion to amend the complaint to include new plaintiffs who possessed the necessary standing, those new plaintiffs could not have prevailed on the UCL claim without proceeding to trial and proving their claim's essential elements, including their standing.[2] Because a trial was not held within the three-year period set by statute, dismissal is mandatory.

We therefore will issue an extraordinary writ directing the respondent court to vacate its order denying the motion to dismiss and enter a new order granting that motion.

## FACTS AND PROCEEDINGS

In July 2000, plaintiffs Eli Paz and Sandra Yanez purchased a used 1999 Chevrolet Cavalier from defendant Sanders Oldsmobile-Cadillac, Inc.'s dealership in Turlock, California. The purchase price included a $1,500 charge for an extended service agreement.

*1. Pleadings*

This litigation began in May 2002, when plaintiffs Paz and Yanez[3] filed a complaint for damages and injunctive relief against defendants Sanders Oldsmobile-Cadillac, Inc. and Claude Kenneth Sanders. Plaintiffs alleged defendants told them that, as purchasers of a used vehicle, they were required to buy an extended service agreement in order to obtain financing from a third-party lender.

The operative pleading during the 2004 trial and subsequent appeal was plaintiffs' first amended complaint filed in September 2002 (FAC). That pleading contained the

---

[2] Our 2007 remand instruction did not mention a new trial because the matter might have been decided in defendants' favor if the trial court denied the motion to amend or later granted judgment in defendants' favor prior to trial.

[3] The original complaint also included Jaimi Dominguez and Odilia Dominguez as plaintiffs. They dismissed their claims shortly after the jury trial commenced in exchange for a waiver of costs.

following causes of action: (1) fraud and deceit, (2) violations of the Consumers Legal Remedies Act, Civil Code section 1750 et seq., (CLRA) (3) violations of the UCL, (4) unjust enrichment, and (5) declaratory relief. Suing individually and as private attorneys general, plaintiffs prayed for an order declaring that defendants' practices were unlawful, an order enjoining the challenged practices, restitution to all affected members of the public, compensatory damages in an amount determined at trial, punitive damages, attorney fees, and costs.

2. *Trial*

In May 2004, a jury trial began on the plaintiffs' legal claims for fraud and violation of the CLRA. The trial court reserved to itself the equitable causes of action, which included the UCL violation.

On June 3, 2004, the seventh day of trial, the jury returned a special verdict finding (1) defendants made a false representation of an important fact to respondents Eli Paz and Sandra Yanez; (2) defendants knew the representation was false or was recklessly made without regard for its truth; (3) defendants intended that Paz and Yanez rely on the representation; (4) Paz and Yanez did not reasonably rely on the representation; (5) defendants did not represent the source or approval or certification of the extended service agreement sold to Paz and Yanez (as an element of Civ. Code, § 1770, subd. (a)(2)); (6) defendants did not represent to Paz and Yanez that the extended service agreement had characteristics, uses or benefits which it did not have (as an element of Civ. Code, § 1770, subd. (a)(5)); and (7) defendants did represent to Paz and Yanez the transaction conferred rights, remedies, or obligations that it did not have or which were prohibited by law (as an element of Civ. Code, § 1770, subd. (a)(14)). The jury further found that Paz and Yanez sustained no monetary damages.

After the jury's special verdict was returned, the trial court requested briefing on the equitable causes of action and indicated the matter would be taken under submission

4.

upon the filing of the reply briefs.  The court took the matter under submission in September 2004.

### 3. Proposition 64

Before the trial court decided the equitable causes of action, the November 2, 2004, General Election was held.  California's voters approved Proposition 64, which changed the standing requirements for claims brought under the UCL.  As a result, a private person has standing to bring a claim under the UCL only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition."  (Bus. & Prof. Code, § 17204, as amended by Prop. 64, § 3.)

### 4. Trial Court Judgment and Appeal

Later in November, the trial court issued its tentative decision, finding defendants' conduct was predatory and indicating restitution was an appropriate remedy. Subsequently, the trial court considered (1) defendants' objections to the tentative decision and (2) supplemental briefing regarding the retroactivity and possible impact of Proposition 64.

In January 2005, the trial court issued its statement of decision, which concluded that Proposition 64 was prospective and did not bar the relief granted under the UCL.

On May 3, 2005, the trial court filed a judgment.  The judgment set forth a finding that defendants had violated the UCL by engaging in deceptive business practices by informing consumers that an extended service agreement was required to obtain third-party financing.  Based on this violation of the UCL, the court ordered restitution to all vehicle buyers who purchased extended service agreements from defendants during the four-year period ending May 22, 2002.  The judgment also set forth procedures for the administration of claims.

The defendants appealed from the judgment and a related order awarding attorney fees.

*5. Proposition 64 Standing Requirements Applied to Pending Cases*

While the appeals were pending, the California Supreme Court addressed whether the standing requirements contained in Proposition 64 applied to actions that were pending when Proposition 64 took effect. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 (*Mervyn's*); *Branick, supra,* 39 Cal.4th 235.) Contrary to the conclusion reached by the trial court, the Supreme Court held that the new standing provisions applied to pending cases. We applied this precedent to reverse the judgment and remanded the matter for further proceedings similar to those described in *Branick*.

In *Branick, supra,* 39 Cal.4th 235, the Supreme Court addressed (1) whether a complaint brought by plaintiffs whose standing had been revoked by Proposition 64 could be amended to add a new plaintiff who met the new standing requirements and (2) whether, for purposes of the statute of limitations, any such amendment related back to the date on which the original complaint was filed. (*Id*. at p. 239.) The Supreme Court rejected the contention that Proposition 64 barred amendments to add plaintiffs with standing and concluded the ordinary rules governing the amendment of complaints and their relation back applied. (*Ibid*.) The Supreme Court stated it could not apply the rules concerning amendments and their relation back because the plaintiffs in *Branick* had not yet (1) filed a motion for leave to amend; (2) identified any person who might be named as a plaintiff; or (3) described the claims such a person might assert. (*Ibid*.) The Supreme Court stated that, if plaintiffs moved to amend their complaint on remand, the superior court should determine whether the circumstances of the case warranted granting leave to amend and whether relation back was appropriate. (*Id.* at pp. 238-239.) By implication, the court held that if the motion to amend was denied, the case was over. If the motion was granted, the new plaintiffs could then proceed with their case through trial. Other than proceeding to trial, what other procedural vehicle is available for a plaintiff to pursue its ultimate remedy?

6.

*6. Paz v. Sanders Reversal of Judgment by this Court*

In *Paz v. Sanders Oldsmobile-Cadillac, Inc, supra,* F048438, we applied the precedent established by *Mervyn's* and *Branick* to the jury's finding that Paz and Yanez sustained no monetary damages, determined that Paz and Yanez lacked standing to pursue a representative claim under the UCL, and concluded that the award of equitable relief on the cause of action for UCL violations could not be upheld. We stated: "The judgment on the third cause of action alleging violations of the UCL must be reversed." In a lengthy footnote to this sentence, we addressed the other of causes of action and reached the conclusion that "no further adjudication is required as to the first, second, fourth, and fifth causes of action in light of the entirety of the record on appeal."

Our opinion also stated that "the proper remedy in the instant case is to remand the matter to allow [plaintiffs] to move for leave to amend their complaint should they chose to do so, and allow the superior court, in the first instance, to determine whether pursuant to *Branick* the circumstances of the case warrant the grant of leave to amend." (*Paz v. Sanders Oldsmobile-Cadillac, Inc, supra,* F048438, at pp. 15-16.)

The disposition at the end of our opinion stated that the judgment and order awarding attorney fees were each reversed. The sentence of the disposition at the center of the current controversy stated: "The matters are however remanded to the trial court for such proceedings as may be appropriate pursuant to *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235." Like the disposition in *Branick,* we provided no further directions—for instance, it did not direct the trial court to enter a particular judgment, to open discovery, or to hold a new trial.

The remittitur in *Paz v. Sanders Oldsmobile-Cadillac, Inc., supra,* F048438, was filed in the Stanislaus Superior Court on March 16, 2007. The filing of remittitur is the event that triggers the three-year period for bringing an action to trial after remand. (Code Civ. Proc., § 583.320, subd. (a)(3).)

7.

*7. Trial Court Proceedings Following Remand.*

In December 2007, a second amended complaint was filed that added six individuals as new plaintiffs: Roxanne Cordova, Aaron Enrique, Yolanda Munoz, Kathleen O. Espinoza, Ethan Rix and Helen Moore.[4] The second amended complaint alleged that each of the new plaintiffs (1) "has suffered injury in fact and has lost money or property as a result of the acts of unfair competition" (boldface omitted) alleged and (2) was "a person who have been found by [the superior court] to have suffered monetary loss and is entitled to restitution based on [the defendants'] violation of the UCL .…" (Boldface omitted.)

In January 2009, plaintiffs filed a third amended complaint that added defendants Smith Chevrolet Co., Inc. (Smith Chevrolet) and Universal Underwriters Insurance Company (Underwriters). The plaintiffs alleged that Smith Chevrolet was the successor in interest to Sanders Oldsmobile-Cadillac, Inc. and responsible for the latter entity's liabilities. They also alleged that Underwriters was the bonding agent for Smith Chevrolet and, thus, was responsible for all claims asserted against Smith Chevrolet.

In September 2011, the trial court denied plaintiffs' first motion for class certification.

In April 2012, defendants filed a motion to dismiss, asserting that the plaintiffs failed to bring the matter to trial within three years after the judgment had been reversed and the remittitur filed by the clerk of the trial court as required by Code of Civil Procedure section 583.320, subdivision (a)(3). This delay, defendants argued, required dismissal of the action pursuant to the mandatory provisions of Code of Civil Procedure section 583.360, subdivision (a).

---

[4] Of these six new plaintiffs, the May 2005 judgment described the evidence produced at trial regarding the transactions involving three of them—Ethan Rix, Kathleen Espinoza and Roxanne Cordova.

The day after defendants filed the motion to dismiss, plaintiffs filed a second motion for class certification. The motion asserted that plaintiffs would ask the court to substitute two additional class representatives, Miriam Casey and Robert Vigneau,[5] in place of Ethan Rix and Roxanne Cordova, who could not be located. The motion further requested that Aaron Enrique, Yolanda Munoz, Kathleen Espinoza, Miriam Casey, and Robert Vigneau be appointed as class representatives and their attorneys be appointed as class counsel.

On June 5, 2012, the trial court signed written orders denying the motion to dismiss and granting the second motion for class certification. The court concluded the mandatory dismissal provisions of the statute did not apply and stated the following rationale:

> "[Specifically], the Court has already determined in prior orders that after remand from the Appellate Court, the issue for determination was whether Plaintiffs should be allowed to amend their pleading to substitute new Plaintiffs as class members with valid claims. Such direction constitutes a continuation of proceedings and not directions for a new trial."

Later in June, defendants filed a petition for writ of mandate with this court, challenging the order denying the motion to dismiss and the order granting the second motion for class certification.

We issued an order to show cause, directing the plaintiffs to file a return with this court and the defendants to file a reply.

## DISCUSSION

I.    STANDARD OF REVIEW APPLICABLE TO MOTION TO DISMISS

The parties appear to agree that, as a general proposition, the trial court's ruling on the motion to dismiss is reviewed for an abuse of discretion.

---

[5] Robert Vigneau testified during the 2004 trial and his testimony is mentioned in the May 2005 judgment.

9.

For instance, defendants' writ petition asserts that it was an abuse of discretion to deny the motion to dismiss under the circumstances of this case. Similarly, plaintiffs' return contends that the order denying the motion to dismiss under Code of Civil Procedure section 583.320, subdivision (a) is reviewed for an abuse of discretion.

One formulation of the test for an abuse of discretion is whether the trial court exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) This test can be summarized as whether the trial court exceeded the bounds of reason. (*Id.* at pp. 318-319.) Though generally regarded as deferential, the abuse of discretion standard of review does not require appellate courts to defer to the trial court's decision on questions of law. (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems*, *Inc.* (1999) 20 Cal.4th 1135, 1144 ["the trial court's discretion is limited by the applicable legal principles"].) Therefore, the issues presented by the motion to dismiss that are questions of law will be subject to our independent review. (See *Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739 [under abuse of discretion standard of review, superior court's conclusions on issues of pure law are subject to independent review].)

The questions presented in this writ proceeding include the proper interpretation of our 2007 opinion. Generally, the "interpretation of an appellate opinion is governed by the rules of construction that apply to any other writing." (16 Cal.Jur.3d (2012) Courts, § 328, p. 880.) Therefore, an opinion must receive a reasonable interpretation, which means that (1) the opinion is read as whole, (2) its language is viewed in light of the facts and the issues before the court, and (3) each statement is considered in its proper context. (*Ibid.*; *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 797.)

Here, when the trial court interpreted our 2007 opinion, it did not consider extrinsic evidence regarding our intent. Consequently, under the basic rules of California law regarding the meaning of writings, the interpretation of our opinion presents a

10.

question of law subject to our independent review. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) Furthermore, we conduct an independent review of the meaning of our opinion because we are in a better position than the trial court to know what we intended. Thus, deference is inappropriate in this context.

## II. MEANING OF OUR 2007 OPINION

### A. Summary of Our Intent

As described in more detail below, in our 2007 opinion we intended (1) to reverse the trial court's determination of the equitable claim brought under the UCL and leave the UCL claim "at large" as though the trial court had issued no decision on the claim; (2) to leave the jury's special verdict unaffected; and (3) to remand for further proceedings that might have reached the point of requiring a new trial of the UCL claim. Our instructions were general because the further proceedings on remand could have taken many different paths. We referenced the *Branick* decision because it identified the starting point for those further proceedings as well as the initial steps that plaintiffs would be required to complete to pursue the UCL claims.

The first decision on remand rested with plaintiffs—they had to decide whether to seek leave to amend to add new plaintiffs. If plaintiffs did not file a motion to amend, our intent was that the trial court would implement the jury's special verdict in favor of defendants, and our determination regarding the lack of standing, by entering a judgment for the defendants. Alternatively, if a motion to amend was filed, then the second decision point would have been reached. How the trial court decided that motion would have affected the ensuing steps.

We intended the trial court to decide any such motion to amend pursuant to the guidance provided by *Branick*—that is, the court should have decided "the motion by applying the established rules governing leave to amend [citation] and the relation back of amended complaints [citation]." (*Branick*, *supra*, 39 Cal.4th at p. 239.)

11.

If the motion to amend was granted and defendants did not present a further bar, we assumed the UCL claims of the new plaintiffs would, by necessity, be tried. A new trial was the only practical means for the new plaintiffs to prove the essential elements of their UCL claims, including standing and causation. (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 325-328 [discussing causation where a UCL claim is based on a fraud theory involving false advertising and misrepresentation].)

In summary, our 2007 decision effected a partial reversal in that it set only the UCL claim "at large" and allowed the jury's special defense verdict to remain in effect. The further proceedings we contemplated could not have resulted in a judgment favorable to the new plaintiffs without a new trial. Consequently, the new plaintiffs were subject to the statute requiring dismissal if an action remanded for new trial is not brought to trial within three years after the remittitur. Therefore, the motion to dismiss for failure to meet the three-year deadline should have been granted.

B.     Principles for Preparing and Interpreting Appellate Opinions

As background for the discussion of the language and meaning of our 2007 opinion, we will set forth some of the legal principles that address the effect of appellate opinions. This overview of the legal principles is concerned mainly, but not exclusively, with the rules that address whether a reversal and remand requires a new trial.

The starting point for this discussion is Code of Civil Procedure section 43, which empowers an appellate court to resolve appeals in a variety of ways. Specifically, the court of appeal "may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." (Code Civ. Proc., § 43.)

1.     *Unqualified Reversals*

When an appellate court simply states that "'the judgment is reversed,'" that disposition of the appeal is referred to as an unqualified reversal. (9 Witkin, Cal.

12.

Procedure (5th ed. 2008) Appeal, § 869, p. 928; Eisenberg, et al. Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 14:141, pp.14-46 ["unqualified" means a reversal without directions to the trial court].) Ordinarily, the effect of an unqualified reversal is to vacate the judgment and leave the case "at large" for further proceedings, including retrial, as if it had never been tried and no judgment had been entered. (*Saller v. Crown Cork & Seal Co., Inc.* (2010) 187 Cal.App.4th 1220, 1238; see *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655 [unqualified reversal presumes that the cause has been remanded for a retrial; the judgment has no remaining vitality or force].)

The general rule that an unqualified reversal places the case "at large" and requires a retrial is subject to a number of exceptions. For instance, the general rule does not apply when the opinion as a whole establishes a contrary intent. (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1500.) This exception is derived from the idea that the substance of the opinion controls, not the form of the order or disposition. (*Ibid.*)

### 2. *Reversals with Directions*

An appellate court may reverse and provide directions as to the proceedings to be conducted on remand. For instance, appellate courts may direct the trial court to enter judgment for the appellant. (Code Civ. Proc., § 43; 9 Witkin, Cal. Procedure, *supra,* Appeal, § 874, pp. 935-936.) Similarly, appellate courts may reverse with directions to dismiss the action (e.g., for mootness or lack of jurisdiction), which is the equivalent of directing the entry of judgment for the defendant. (9 Witkin, *supra,* § 878, p. 939.)

Appellate courts also may provide directions regarding the further proceeding to be conducted on remand. For example, the appellate court might include directions regarding discovery on remand. (*Stockton Teachers Assn. CTA/NEA v. Stockton Unified*

*School Dist.* (2012) 204 Cal.App.4th 446, 466 ["trial court shall allow discovery on the issue of mitigation of damages"].)[6]

In addition, appellate courts may reverse and explicitly "direct a new trial" be conducted. (Code Civ. Proc., § 43.) When a judgment is reversed, directions stating that the cause is remanded for a new trial merely describe what would follow from an unqualified reversal. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 883, p. 945.) Thus, such directions are superfluous yet harmless because they do not render the decision ambiguous. (*Ibid*.)

### 3. *Partial Reversals with Directions*

An appellate court may reverse a judgment in part and affirm it in part, with or without directions. (9 Witkin, Cal. Procedure, *supra*, Appeal, § 888, p. 949.) Partial reversals sometimes include directions for the trial court to retry a particular issue. (9 Witkin, *supra*, § 890, pp. 950-951.) For example, where no error occurred on the determination of liability, but an error was made in the amount of damages awarded, the appellate decision may reverse and direct the trial court "to retry the single issue of damages and enter judgment for the plaintiff in the amount so determined." (*Id*. at p. 951.)

When an appellate court reverses with directions, the trial court is empowered to act only in accordance with those directions. (*Hampton v. Superior Court, supra,* 38 Cal.2d at p. 655.) Action by the trial court that does not conform to the directions given is void. (*Ibid*.) "Where the directions to the trial court are ambiguous, they are

---

[6] It appears that directions sometimes are included in the appellate decision to comply with the mandatory language in Code of Civil Procedure section 43, which provides: "In giving its decision, if a new trial be granted, the court *shall* pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case." (Italics added.)

interpreted in accordance with the views, reasoning, and holdings expressed in the opinion as a whole." (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.)

### C. Language of the 2007 Disposition

The "disposition" at the end of our opinion in *Paz v. Sanders Oldsmobile-Cadillac, Inc., supra,* F048438, stated in full:

> "The 'JUDGMENT' (after bifurcated jury and court trials) filed May 3, 2005, and the 'ORDER ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND MOTION TO TAX COSTS OF DEFENDANTS' filed September 12, 2005, are each reversed. The matters are however remanded to the trial court for such proceedings as may be appropriate pursuant to *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235. [¶] Each party shall bear its own costs on appeal."

Described in general terms, we (1) reversed the judgment and (2) included instructions to guide the proceedings on remand.

### D. Our Intent Regarding the Scope of the Reversal

The disposition stated that the judgment filed May 3, 2005, was reversed, which could be viewed as putting the entire case at large. This, however, was not our intent. Earlier in the opinion, our intent regarding the scope of the reversal was stated with more particularity: "The judgment on the third cause of action alleging violations of the UCL must be reversed." A lengthy footnote to this sentence began with the observation that the "[r]eversal of the judgment on the third cause of action raises questions as to the viability of the remainder of the judgment and the special verdict upon which it is partially based." After discussing Paz and Yanez's first through fifth causes of action, we ended the footnote by stating:

> "Although the judgment entered May 3, 2005, does not expressly address the non-UCL causes of action, *no further adjudication* is required as to the first, second, fourth, and fifth causes of action in light of the entirety of the record on appeal. Moreover, the remedies awarded by the trial court related only to the third cause of action for violations of the UCL." (Italics added.)

15.

From these statements, it is reasonably clear that we intended the special verdict rendered by the jury, for the defendants, to remain in effect and also intended to reverse and require "further adjudication" only as to the third cause of action. Our reversal as to the third cause of action was complete—that is, the UCL claim was put "at large" as though the trial court had never issued its statement of decision and the subsequent judgment.

In summary, the scope of our reversal was limited to the UCL claim.

E.     New Trial and the Intent Underlying Our Directions

Our disposition included directions remanding "to the trial court for such proceedings as may be appropriate pursuant to *Branick* .…" This language did not expressly require or prohibit a new trial. In hindsight, our directions were ambiguous.

At the time, we believed our reference to *Branick* indicated our intention to (1) return the UCL claim to the pleading stage[7] and (2) put the UCL cause of action "at large." It appeared to us that our partial reversal and returning the UCL claim to the pleading stage necessarily meant that no part of the trial court's statement of decision and judgment regarding the UCL claim remained in effect. (See *In re Anna S.*, *supra*, 180 Cal.App.4th at pp. 1499-1500 [right to file amended pleadings before a retrial].) Thus, the further proceedings on remand were to be conducted as if the UCL claims had never been tried or decided by the trial court. (*Ibid.*)

As noted earlier, we did not expressly require a new trial because the UCL claims might not have proceeded to trial if plaintiffs' motion to amend had been denied or the new plaintiffs claims fell beyond the statute of limitations. If those hurdles were overcome, a new trial would have been necessary for the new plaintiffs to prevail because

---

        [7] In *Branick*, the Supreme Court determined that the trial court should decide whether the plaintiffs should be granted leave to add new plaintiffs for the purpose of satisfying Proposition 64's standing requirements. (*Branick*, *supra*, 39 Cal.4th at p. 239.)

16.

they had to *prove* the essential elements of their UCL claims, which included standing and causation. A new trial would have been necessary because any findings of fact in the trial court's statement of decision and judgment that might have addressed the transactions involving the new plaintiffs were no longer in effect after our reversal.

Based on the foregoing, we conclude that Code of Civil Procedure section 583.320, subdivision (a)(3) required the action to be brought to trial within three years of the filing of the remittitur. Because this requirement was not met, dismissal of the action pursuant to Code of Civil Procedure section 583.360, subdivision (a) was mandatory.

## DISPOSITION

Let a writ of mandate issue directing the superior court to (1) vacate the orders it signed on June 5, 2012, denying defendants' motion to dismiss and granting plaintiffs' second motion for class certification; (2) enter a new order granting the motion to dismiss and denying the second motion for class certification; and (3) enter a judgment dismissing the UCL claim and setting forth such terms as are appropriate to implement the jury's special verdict.

Defendants shall recover their costs in this proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

_____
Franson, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Detjen, J.

17.